1
2
3
4
5
6
7

8                     UNITED STATES DISTRICT COURT

9                   SOUTHERN DISTRICT OF CALIFORNIA

10

11 | IQVIA INC., a Delaware corporation; and        Case No.:  21-CV-2081-GPC-DEB
   | IQVIA AG, a Swiss company,
12 |                                                 **ORDER GRANTING DEFENDANTS'**
   |                                 Plaintiff,       **MOTION TO DISMISS WITH**
13 |                                                 **LEAVE TO AMEND**
   | v.
14 |                                                 **[REDACTED – ORIGINAL FILED**
   | MEDIMPACT HEALTHCARE                            **UNDER SEAL]**
15 | SYSTEMS, INC., a California
   | corporation; and DALE BROWN, an                 **[Dkt. No. 36.]**
16 | individual,
17 |                                 Defendant.

18

19

20         Before the Court is Defendants MedImpact Healthcare Systems, Inc. and Dale

21 Brown's motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).  (Dkt.

22 No. 36.)  Plaintiffs IQVIA, Inc. and IQVIA AG filed an opposition.  (Dkt. No. 42.)

23 Defendants filed a reply.   (Dkt. No. 51.)  The Court finds that the matter is appropriate

24 for decision without oral argument pursuant to Local Civ. R. 7.1(d)(1).   Based on the

25 reasoning below, the Court GRANTS Defendants' motion to dismiss with leave to

26 amend.

27 / / /

28
                                          1

**Background**

On December 13, 2021, Plaintiffs IQVIA Inc. and IQVIA AG (collectively "Plaintiffs") filed a complaint for misappropriation of trade secrets under the 1) Defend Trade Secrets Act ("DTSA"), 18 U.S.C. § 1836; 2) misappropriation of trade secrets under the California Uniform Trade Secrets Act ("CUTSA"); and 3) violations of Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(c) against Defendants MedImpact Healthcare Systems, Inc. ("MedImpact") and Dale Brown ("Mr. Brown") (collectively "Defendants"); and 4) breach of fiduciary duty and duty of loyalty; and 5) civil conspiracy against Mr. Brown.  (Dkt. No. 1, Compl.)

The complaint arises out of litigation in a related case, *MedImpact Healthcare Systems, Inc. et al. v. IQVIA Holdings Inc. et al.* in Case No. 19cv1865-GPC(DEB).  In that case, the complaint was filed on September 26, 2019, (*id.*, Dkt. No. 1), and an answer was filed on September 10, 2020, (*id.*, Dkt. No. 131), with an amended answer filed on October 15, 2020, (*id.*, Dkt. No. 134).  On September 1, 2021, IQVIA Inc. and IQVIA AG filed a motion for leave to file a second amended answer to add counterclaims which the Court denied on November 16, 2021.  (*Id.*, Dkt. Nos. 305, 360.)  The Court found that IQVIA Inc. and IQVIA AG failed to demonstrate diligence under Federal Rule of Civil Procedure 16 in seeking to file the proposed pleading because they knew of proposed claims as far back as February 2018 when similar counterclaims were raised in a prior arbitration.  (*Id.*)  As such, on December 13, 2021, IQVIA filed the instant complaint raising the same causes of action as the proposed counterclaim in the related case.  (Dkt. No. 1, Compl.)

Plaintiff IQVIA AG has its principal place of business in Switzerland and is wholly owned by Plaintiff IQVIA Inc., which has its principal place of business in Plymouth Meeting, Pennsylvania.  (*Id.* ¶¶ 13, 14.)  IQVIA AG is the controlling beneficial owner of

non-party Dimensions Healthcare LLC ("Dimensions"), a United Arab Emirates company, and has the exclusive power to control Dimensions' operations.  (*Id.* ¶ 14.)

Plaintiffs allege that, since 2011, Defendants along with non-parties MedImpact International LLC ("MIL") and MedImpact International Hong Kong Ltd. ("MI-HK") targeted non-party Dimensions to steal confidential and proprietary trade secrets through a Joint Venture ("JV") between MIL and Dimensions entered on February 1, 2012.  (*Id.* ¶ 1 & n.1.)  Specifically, Plaintiffs claim that MedImpact sought to build a new ███ ██
████████████████████████████████████████████████████████
████████████████████████████████████████████. (*Id.* ¶¶ 2, 46 (UNDER SEAL).)

At issue are Plaintiffs' confidential and proprietary drug-to-diagnosis indication and contraindication edits.  (*Id.* ¶ 3.)  "Drug-to-diagnosis indication edits provide a rejection alert when a patient requests to fill a prescription for a medication that is not used to treat that patient's medical diagnosis. For example, an indication edit would reject the incorrect prescription of an antibiotic—used to treat bacterial infections—for a viral infection, such as influenza.  Relatedly, drug-to-diagnosis contraindication edits provide a rejection alert when a patient requests to fill a prescription for a medication that a result in an adverse drug event if the medication is taken by a patient with certain medical conditions." (*Id.*)  These edits save lives and minimize errors, fraud, waste, and/or abuse of medications and drive savings.  (*Id.* ¶¶ 21, 23.)

MedImpact did not have the ability to offer these edits before partnering with Dimensions in the JV and instead of investing resources to develop its own drug-to-

---

[1] "A PBM platform is a platform that allows patients to obtain insurance approvals for prescribed medicines through online, real-time insurance coverage approvals or denials for prescribed medicines, based upon clinical algorithms, plan design rules, and member eligibility."  (Dkt. No. 1, Compl. ¶ 1, n. 2.)

diagnosis indication and contraindication edits, it took a "shortcut" and stole Plaintiffs' trade secrets.  (*Id.* ¶ 5.)  After the JV was terminated in 2017, MedImpact had to decide how to proceed without Dimensions' trade secrets concerning edits and ████████ ████████████████████████████████████  ████████████ to replace Dimensions' technology.  (*Id.* ¶¶ 9, 41-46 (UNDER SEAL).)  Plaintiffs claim that Defendants misused the partnership with Dimensions for their own gain and engaged in years-long theft of those trade secrets and exploited that theft by offering and/or providing these edits for sale in the United States, Australia, South Africa, Canada, ████████████████ ████████████ as well as other locations.  (*Id.* ¶ 8 (UNDER SEAL).)  The theft continued even after IQVIA AG acquired Dimensions in 2016.  (*Id.* ¶ 9.)  Defendants avoided years of research and development time and saved tens of millions of dollars.  (*Id.* ¶ 10.) Moreover, they never disclosed that they had been stealing the trade secrets and offering them for sale, and in fact, they actively concealed these facts.  (*Id.*)  Further, Dale Brown engaged in unlawful conduct while serving on the Board of the JV and was also General Manager.  (*Id.* ¶ 11.)

## Discussion

### A.     Legal Standard as to Federal Rule of Civil Procedure 12(b)(6)

Federal Rule of Civil Procedure ("Rule") 12(b)(6) permits dismissal for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  Dismissal under Rule 12(b)(6) is appropriate where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory.  *See Balistreri v. Pacifica Police Dep't.,* 901 F.2d 696, 699 (9th Cir. 1990).  Under Federal Rule of Civil Procedure 8(a)(2), the plaintiff is required only to set forth a "short and plain statement of the claim

---

[2] It appears that ████████████████████████████████████████████████ at MedImpact sought to allegedly create with Dimensions' trade secrets.  (Dkt. No. 1, Compl. ¶¶ 79d, 82 (UNDER SEAL).)

1  showing that the pleader is entitled to relief," and "give the defendant fair notice of what

2  the . . . claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly,*

3  550 U.S. 544, 555 (2007).

4        A complaint may survive a motion to dismiss only if, taking all well-pleaded

5  factual allegations as true, it contains enough facts to "state a claim to relief that is

6  plausible on its face." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Twombly*,

7  550 U.S. at 570).  "A claim has facial plausibility when the plaintiff pleads factual

8  content that allows the court to draw the reasonable inference that the defendant is liable

9  for the misconduct alleged." *Id.*  "Threadbare recitals of the elements of a cause of

10  action, supported by mere conclusory statements, do not suffice." *Id.*  "In sum, for a

11  complaint to survive a motion to dismiss, the non-conclusory factual content, and

12  reasonable inferences from that content, must be plausibly suggestive of a claim entitling

13  the plaintiff to relief." *Moss v. U.S. Secret Serv.,* 572 F.3d 962, 969 (9th Cir. 2009)

14  (quotations omitted).  In reviewing a Rule 12(b)(6) motion, the Court accepts as true all

15  facts alleged in the complaint, and draws all reasonable inferences in favor of the

16  plaintiff.  *al-Kidd v. Ashcroft*, 580 F.3d 949, 956 (9th Cir. 2009).

17  **B.**  **Request for Judicial Notice**

18        Defendants filed a request for judicial notice of Exhibits 1, 2, and 11 through 21[3]

19  filed or submitted in the prior arbitration or are matters of public record.  (Dkt. No. 36-2,

20  Ds' RJN.)  Plaintiffs do not oppose.

21        On a Rule 12(b)(6) motion, the Court may not consider documents outside the

22  complaint.  *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001).  The Ninth

23

24

25  [3] Defendants also seek judicial notice of Exhibits 3 and 4 which is MIA's certificate of incorporation
    and articles of association as they are publicly filed records of the Cayman Islands.  (Dkt. No. 36-2, Ds'
26  RJN.)  Because the Court did not consider these documents in its ruling, the Court DENIES the request
    for judicial notice of Exhibits 3 and 4.

27

28

21-CV-2081-GPC-DEB

1    Circuit recognizes two exceptions to this general rule.  First, documents which are

2    properly attached to the complaint may be considered and if "the documents are not

3    physically attached to the complaint, they may be considered if the documents'

4    "authenticity . . . is not contested" and "the plaintiff's complaint necessarily relies" on

5    them.  *Id.* (citing *Parrino v. FHP, Inc*., 146 F.3d 699, 705–06 (9th Cir. 1998)).  Second, a

6    court may take judicial notice of "matters of public record."  *Id.*; *see* Fed. R. Evid. 201.

7         Under the first exception, the incorporation by reference doctrine, a document may

8    be considered by the court "if the plaintiff refers extensively to the document or the

9    document forms the basis of the plaintiff's claim."  *United States v. Ritchie*, 342 F.3d 903,

10   908 (9th Cir. 2003).  "The defendant may offer such a document, and the district court

11   may treat such a document as part of the complaint, and thus may assume that its contents

12   are true for purposes of a motion to dismiss under Rule 12(b)(6)."  *Id.*  However, a court

13   is not "required to accept as true allegations that contradict exhibits attached to the

14   Complaint or matters properly subject to judicial notice, or allegations that are merely

15   conclusory, unwarranted deductions of fact, or unreasonable inferences."  *Daniels-Hall v.*

16   *National Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010).

17        Plaintiffs seek judicial notice of certain documents that were filed in the prior

18   arbitration as well as the arbitration awards, (Dkt. No. 36-2, Ds' RJN, Exs. 1, 2, 11-21).

19   Because the Court "may take notice of proceedings in other courts, both within and

20   without the federal judicial system, if those proceedings have a direct relation to matters

21   at issue", *U.S. ex rel. Robinson Rancheria Citizens Council v. Borneo, Inc*., 971 F.2d 244,

22   248 (9th Cir. 1992), the Court GRANTS Plaintiffs' request for judicial notice of these

23   documents.  Additionally, the Court takes judicial notice of Exhibits 11, 12, 17, and 19

24   under the incorporation by reference doctrine because Plaintiffs quote and rely on them to

25   support the basis of their complaint.  (Dkt. No. 1, Compl. ¶¶ 78, 81, 82.)

26   / / /

27

28

21-CV-2081-GPC-DEB

1

## C.    Statute of Limitation

Defendants argue that the DTSA and CUTSA causes of action are untimely and tolling based on continuous misappropriation and fraudulent concealment cannot save these claims.  (Dkt. No. 36-1 at 11-19.[4])  Plaintiffs do not oppose Defendants' argument regarding continuous misappropriation but instead maintain that their trade secret claims are timely under equitable tolling and fraudulent concealment.  (Dkt. No. 42 at 12-17.)

On a motion to dismiss based on the statute of limitations, the Court must assess whether "the running of the statute is apparent on the face of the complaint."  *Huynh v. Chase Manhattan Bank*, 465 F.3d 992, 997 (9th Cir. 2006) (quoting *Jablon v. Dean Witter & Co.*, 614 F.2d 677, 682 (9th Cir. 1980) ("When a motion to dismiss is based on the running of the statute of limitations, it can be granted only if the assertions of the complaint, read with the required liberality, would not permit the plaintiff to prove that the statute was tolled.")).  Here, because the Court grants Defendants' request for judicial notice, it will consider the allegations in the complaint as well as the judicially noticed documents in determining whether the complaint is timely.

The DTSA and CUTSA impose a three-year statute of limitations.  18 U.S.C. § 1836(d); Cal. Civ. Code § 3426.6.  They also provide that "a continuing misappropriation constitutes a single claim of misappropriation."  18 U.S.C. § 1836(d); Cal. Civ. Code § 3426.6 ("a continuing misappropriation constitutes a single claim.").  The parties do not dispute that Plaintiffs have known about their claims since at least February 20, 2018, the date their subsidiary, Dimensions, filed a breach of contract counterclaim against MIL and MI-HK for having used its drug-to-diagnosis indication and contraindication edits in the prior arbitration.  (Dkt. No. 1, Compl. ¶ 78.)  The complaint in this case was filed on

_____

[4] Page numbers are based on the CM/ECF pagination.

7

1
2

December 13, 2021 over three years later.  Therefore, the complaint is time barred unless a theory of tolling applies to excuse the untimely filing.[5]

3
4
5
6
7
8
9
10
11
12

While Plaintiffs rely on equitable tolling and fraudulent concealment, the theory they present, based on the complaint's allegations, is equitable estoppel or fraudulent concealment.  *See Stitt v. Williams*, 919 F.2d 516, 522 (9th Cir. 1990) ("The case law is confused and contradictory, but the better reasoning states that equitable tolling applies when the plaintiff is unaware of his cause of action, while equitable estoppel applies when a plaintiff who knows of his cause of action reasonably relies on the defendant's statements or conduct in failing to bring suit."); *Deloney v. Tri-Cnty. Met. Transp*., No. 3:11–cv–00977–ST, 2012 WL 5303667, at *8 (D. Or. Sept. 28, 2012) ("Given its focus on the actions of other individuals, [the plaintiff's] argument is more accurately characterized as invoking the doctrine of equitable estoppel.").

13
14
15
16
17
18
19
20
21

Under the doctrine of equitable estoppel or fraudulent concealment, *Coppinger-Martin v. Solis*, 627 F.3d 745, 751 (9th Cir. 2010) ("[e]quitable estoppel is also sometimes referred to as 'fraudulent concealment'"), a party "should not be allowed to benefit from its own wrongdoing."  *Estate of Amara v. City of Oakland*, 653 F.3d 808, 813 (9th Cir. 2011) (quoting *Collins v. Gee West Seattle LLC*, 631 F.3d 1001, 1004 (9th Cir. 2011)).  A plaintiff must plead "(1) knowledge of the true facts by the party to be estopped, (2) intent to induce reliance or actions giving rise to a belief in that intent, (3) ignorance of the true facts by the relying party, and (4) detrimental reliance."  *Id.* (quoting *Bolt v. United States*, 944 F.2d 603, 609 (9th Cir. 1991)).[6]  "This doctrine may

22
23

---

24
25

[5] The complaint alleges that the statute of limitations should be tolled under "the discovery rule, equitable tolling, equitable estoppel, fraudulent concealment, and the continuing violation and continuous accrual doctrine."  (Dkt. No. 1, Compl. ¶ 86.)

26
27

[6] On equitable estoppel, the Ninth Circuit has also considered "a non-exhaustive list of factors, including: (1) the plaintiff's actual and reasonable reliance on the defendant's conduct or representations, (2) evidence of improper purpose on the part of the defendant, or of the defendant's actual or

28

21-CV-2081-GPC-DEB

1   be available when the defendant lulls the plaintiff into failing to bring suit." *Stitt,* 919

2   F.2d at 523 (citing *Glus v. Brooklyn E. Dist. Terminal*, 359 U.S. 231, 232-34 (1959) and

3   *Atkins v. Union Pac. RR*, 685 F.2d 1146, 1149 (9th Cir. 1982)).  California applies the

4   similar equitable estoppel factors as federal law.  *Lukovsky v. City & Cnty. of San*

5   *Francisco*, 535 F.3d 1044, 1051-52 (9th Cir. 2008) ("California equitable estoppel is thus

6   similar to and not inconsistent with federal common law, as both focus on actions taken

7   by the defendant which prevent the plaintiff from filing on time.").

8       "[The plaintiff] carries the burden of pleading and proving fraudulent concealment;

9   it must plead facts showing that [the defendant] affirmatively misled it, and that [the

10  plaintiff] had neither actual nor constructive knowledge of the facts giving rise to its

11  claim despite its diligence in trying to uncover those facts."  *Hexcel Corp. v. Ineos*

12  *Polymers, Inc*., 681 F.3d 1055, 1060 (9th Cir. 2012).  "[F]raudulent concealment . . .

13  requires a showing . . . the plaintiff was, in fact, ignorant of the existence of his cause of

14  action."  *Id.* (quoting *Wood v. Santa Barbara Chamber of Commerce, Inc*., 705 F.2d

15  1515, 1521 (9th Cir. 1983)).  "The plaintiff is deemed to have had constructive

16  knowledge if it had enough information to warrant an investigation which, if reasonably

17  diligent, would have led to the discovery of the fraud." *Beneficial Standard Life Ins*. *Co.*

18  *v. Madariaga*, 851 F.2d 271, 275 (9th Cir. 1988).  It is enough that the plaintiff "should

19  have been alerted to facts that, following duly diligent inquiry, could have advised it of

20  its claim."  *Conmar Corp. v. Mitsui & Co. (U.S.A.), Inc*., 858 F.2d 499, 502 (9th Cir.

21  1988).

22

23

24  _____

25  constructive knowledge of the deceptive nature of its conduct, and (3) the extent to which the purposes
    of the limitations period have been satisfied."  *Johnson v. Henderson,* 314 F.3d 409, 414 (9th Cir. 2002)
26  (quoting *Santa Maria v. Pacific Bell*, 202 F.3d 1170, 1176 (9th Cir. 2000)).  Neither party addresses
    these factors.
27
                                        9
28                                                                    21-CV-2081-GPC-DEB

Prior to the complaints filed in this district, on January 23, 2018, MIL and MI-HK filed claims in arbitration against Dimensions with the Dubai International Financial Centre-London Court of International Arbitration ("DIFC-LCIA") for breaches of the terms of the parties' Joint Venture Agreement ("JVA") and Services and License Contract[7] ("SLC") with a Partial Final Award on Liability on April 16, 2019 and a Final Award on July 24, 2019.  (Dkt. No. 45, Bennett Decl., Exs. 1, 2 (UNDER SEAL).) According to the complaint, on February 20, 2018, Dimensions filed counterclaims for breach of contract of the JVA and Service Level Agreement against MIL and MI-HK for using Dimensions' intellectual property concerning ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬.  (Dkt. No. 1, Compl. ¶ 78 (UNDER SEAL).)

According to the complaint, during the arbitration, between January 23, 2018 to July 24, 2019, MedImpact and Mr. Brown falsely and repeatedly denied that MedImpact had misused Dimensions' drug-to-diagnosis indication and contraindication edits.  (*Id.* ¶ 79 (UNDER SEAL).)  On January 3, 2019, Mr. Brown declared, in a sworn statement, that ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬."  (*Id.* ¶ 79a (UNDER SEAL).)  But, ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬.  (*Id.* (UNDER SEAL).)  Mr. Brown also denied any allegations that MedImpact ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬, ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬.

---

[7] The Services and License Contract appears to be the Service Level Agreement noted in paragraph 78 of the complaint.

10

1 ██████████████████████████████████████████████████████████

2 ████████████████████. (*Id.* ¶¶ 79b-d (UNDER SEAL).)

3          Additionally, Plaintiffs claims that MedImpact concealed evidence of its misuse by

4 refusing to respond to document requests related to drug-to-diagnosis edits and by

5 blocking discovery of ██████████████████████████████████████████

6 ███████████████████████████████████████████

7 ███████████████████████████████████.

8 (*Id.* ¶ 80.)  MedImpact further refused to allow Dimensions' expert access to its

9 ████████████████████████████████████████████

10 ███████████████████████████████████. .

11 . ." (*Id.* ¶ 81.)  In sum, Plaintiffs aver that MedImpact and Mr. Brown fraudulently

12 concealed their misuse of Plaintiffs' drug-to-diagnosis edits by making knowingly false

13 statements in and concealing relevant evidence in the arbitration.  (*Id.* ¶ 82.)

14          Relying on MI-HK and MIL's false representations, Plaintiffs maintain that

15 Dimensions ████████████████████████████████████

16 █████████████ (*Id.* (UNDER SEAL).)  In a letter withdrawing its counterclaim, Dimensions

17 wrote, █████████████████████████████████████

18 ████████████████████████████████████████

19 █████████████████████████████████." (*Id.*

20 (UNDER SEAL).)

21          Despite their diligence in pursuing claims against MedImpact in the arbitration and

22 due to MedImpact's false statements and concealment, Plaintiffs claim they did not learn

23 about the instances of misappropriation alleged in the complaint until the summer of

24 2021 during the exchange of documents in discovery in the related case, Case No.

25 19cv1865-GPC(DEB).  (*Id.* ¶ 83.)  Plaintiffs first learned of ██████████████

26 ██████████████████████████████████████████

27

28

1  August 6, 2021, (*id.* ¶ 84 (UNDER SEAL)), and that MedImpact was offering ████

2  ████████████████████████████████████████████████████

3  ████████████████████  (*Id.* (UNDER SEAL).)  Finally, Defendants' alleged

4  misappropriation of Plaintiffs' trade secret post-date the arbitration based on an October

5  12, 2021 court filing stating that MedBloc X is a new product that will be used in the

6  UAE.  (*Id.*)  Within three weeks of learning of the ████████████████████

7  Plaintiffs promptly filed the complaint in this case.  (*Id.* ¶ 87 (UNDER SEAL).)

8        Plaintiffs rely on *RA Med. Sys., Inc. v. PhotoMedex, Inc.,* 373 Fed. App'x 784,

9  786-87 (9th Cir. 2010) where the Ninth Circuit reversed the district court's dismissal of

10  the misappropriation of trade secret claim as time barred even though PhotoMedex

11  alleged it did not learn of the misappropriation until it obtained and analyzed RA

12  Medical's "Pharos" laser in 2006.  The Ninth Circuit concluded that RA Medical, by

13  denying that the design plan for the Pharos laser had been finalized at the time of the

14  PhotoMedex's 2003 lawsuit, it may have hid any misappropriation; therefore,

15  PhotoMedex was entitled to rely on any misrepresentations RA Medical may have made

16  in obscuring its cause of action.  *Id.*

17        Here, Plaintiffs had constructive knowledge concerning the facts underlying the

18  complaint since at least February 2018 when Dimensions filed its counterclaim in the

19  arbitration and through discovery obtained additional knowledge and evidence to support

20  its claims by the time it withdrew the counterclaim in March 2019.  In the letter

21  withdrawing the counterclaim to MIL and MI-HK, Dimensions wrote that it "████

22  ████████████████████████████████████████████████████

23  ████████████████████████████████████████████

24  ████████████████████████████████████████████████████

25  ████████████████████████████████████████████

26  ██████████████████████████████████  (Dkt. No. 45,

27

28

Bennett Decl., Ex. 1, Partial Final Award on Liability ¶ 200 n. 206; *id.*, Ex 17 (UNDER SEAL).)  Therefore, the remaining question is whether Plaintiffs were diligent and whether false statements and concealment prevented Plaintiffs from continuing with and maintaining the action.

As Defendants explain, the only new discovery of facts that Plaintiffs allege are 1) ██████████████████████████████████████████████████████████████ ████████████" to upload Dimensions' trade secrets and 2) MedImpact████████ ████████████████████████████████████████.  (Dkt. No. 1, Compl. ¶¶ 79a-d.)  Yet, the judicially noticed documents show that Plaintiffs were already aware that MedImpact was allegedly developing a new product to include drug-to-diagnosis edits and contraindication edits, that files had been allegedly ████████████████████████ and that MIL and MI-HK were alleged offering or using this capability outside the JV Territory.

For example, on February 20, 2018, Dimensions alleged that it had "evidence" that MIL and MI-HK infringed Dimensions' intellectual property and they "████████████ ████████████████████████████████████████████████████ ████████████  (Dkt. No. 45, Bennett Decl., Ex. 11, Response to the Request for Arbitration ¶ 37 (UNDER SEAL).)  Dimensions further alleged that MI-HK and MIL have intentionally used the JV's technology to promote their business in other regions and include ████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████████ ████████████████████████████████████████."  (*Id.* ¶¶ 54(b)(ii); 54(b)(ii)(c) (UNDER SEAL).)  It also claimed that "████████████████████████████ ██████████████████████████████████████████████████████ ████████████████████████████████████"  (*Id.* ¶ 59 (UNDER SEAL).)  As to Mr. Brown, Dimensions ██████████████████████████████████████████████████

13

1  ████████████████████████████████████████████

2  ████████████████████████████████████████████████

3  ████████████ (*Id.* ¶ 67 (UNDER SEAL).)

4        Furthermore, on August 27, 2018, Dimensions claimed that MIL and MI-HK used

5  Dimensions' proprietary information and intellectual property ████████████████

6  ████████████████████████

7  ████████████████████████████████████████ (Dkt. No. 45,

8  Bennett Decl., Ex. 15, Statement of Defence & Counterclaim ¶ 247 (UNDER SEAL).)

9  At the evidentiary hearing on February 21, 2019, Mr. Yousef Ghosheh of IQVIA testified

10  ████████████████████████████████████████

11  ████████████████ (Dkt. No. 45, Bennett Decl., Ex. 14, Y. Ghosheh Test. at 84:24-

12  85:1 (UNDER SEAL).)  He also testified that he had concerns that ████████████

13  ████████████████████████████████████████████

14  ████████████████████████████████ (*Id.*, Ex. 14, Ghosheh

15  Test. at 64:18-22 (UNDER SEAL).)  As noted by the Arbitrator, the counterclaim was

16  ████████████████████████████████████████████

17  ████████████████████████████████ (Dkt. No. 45, Bennett

18  Decl., Ex. 1, Partial Final Award on Liability ¶ 200 (UNDER SEAL).)

19        The above facts demonstrate that Dimensions knew it had a cause of action as of

20  February 2018 and was armed with some evidence to support the claim at the time it

21  litigated its counterclaim before the arbitrator.  The complaint shows that Plaintiffs had,

22  at a minimum, constructive knowledge of Defendants' misappropriation of Dimensions'

23  intellectual property as of February 2018.  Further, at the time it withdrew its

24  counterclaim, Dimensions remained "deeply concerned" about MIL and MI-HK's use of

25  its trade secret.  Given these circumstances, plaintiff "should have been alerted to facts

26  that, following duly diligent inquiry, could have advised it of its claim."  *See Conmar*

27

28

21-CV-2081-GPC-DEB

1    *Corp.*, 858 F.2d at 502.  For example, when the related complaint, 19cv1865-GPC(DEB),

2    was filed, Plaintiffs could have timely asserted a counterclaim of misappropriation and

3    diligently sought the discovery allegedly concealed during arbitration on these claims.  In

4    light of their constructive knowledge, Plaintiffs did not exercise diligence and,

5    accordingly, the Court concludes that Plaintiffs have failed to adequately allege equitable

6    estoppel or fraudulent concealment.

7          To the extent Plaintiffs also rely on equitable tolling, the allegations in the

8    complaint do not support tolling under this theory.  (Dkt. No. 1, Compl. ¶ 86.)  A party

9    seeking equitable tolling must demonstrate "(1) that he has been pursuing his rights

10   diligently, and (2) that some extraordinary circumstance stood in his way."  *Pace v.*

11   *DiGuglielmo*, 544 U.S. 408, 418 (2005).   Equitable tolling focuses on "whether there

12   was excusable delay by the plaintiff: If a reasonable plaintiff would not have known of

13   the existence of a possible claim within the limitations period, then equitable tolling will

14   serve to extend the statute of limitations for filing suit until the plaintiff can gather what

15   information he needs."  *Johnson v. Henderson*, 314 F.3d 409, 414 (9th Cir. 2002).  Here,

16   as seen above, Plaintiffs have not sufficiently alleged that they pursued their rights

17   diligently in light of having constructive knowledge of the underlying facts.  Therefore,

18   the Court GRANTS Defendants' motion to dismiss the DTSA and CUTSA as time barred

19   with leave to amend.

20   **D.    Issue Preclusion**

21         Defendants argue that issue preclusion bars all causes[8] of action because the

22   arbitrator ruled that MedImpact did not misappropriate trade secrets for indication and

---

25   [8] Despite dismissing the DTSA and CUTSA causes of action, the Court considers Defendants' argument
26   on issue preclusion as they argue that issue preclusion bars all claims in the complaint.  Therefore, the
     Court considers whether issue preclusion bars the remaining RICO, breach of fiduciary duty and
27   conspiracy claims.

contraindication edits and this ruling underpins all claims raised in the complaint.  (Dkt. No. 36-1 at 19-23.)   Plaintiffs disagree arguing the arbitrator did not reach the merits of Dimensions' counterclaim.  (Dkt. No. 42 at 18-20.)

Issue preclusion precludes parties from raising matters that they had a full and fair opportunity to litigate and "protect against the expense and vexation attending multiple lawsuits, conserv[e] judicial resources, and foste[r] reliance on judicial action by minimizing the possibility of inconsistent decisions."  *Taylor v. Sturgell,* 553 U.S. 880, 892 (2008) (quoting *Montana v. United States*, 440 U.S. 147, 153-54 (1979)).  "When an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties, whether on the same or a different claim."  Restatement (Second) of Judgments § 27; *Taylor*, 553 U.S. at 892 (issue preclusion bars "'successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment,' even if the issue recurs in the context of a different claim").  The elements of issue preclusion are "(1) the issue necessarily decided at the previous proceeding is identical to the one which is sought to be relitigated; (2) the first proceeding ended with a final judgment on the merits; and (3) the party against whom [issue preclusion] is asserted was a party or in privity with a party at the first proceeding."  *Garity v. APWU Nat'l Labor Org*., 828 F.3d 848, 858 n.8 (9th Cir. 2016) (quoting *Paulo v. Holder*, 669 F.3d 911, 917 (9th Cir. 2011)).

On the issue of whether a question, issue or fact was "actually litigated", the Ninth Circuit has articulated four conditions that must be met for issue preclusion to apply: "(1) the issue at stake was identical in both proceedings; (2) the issue was actually litigated and decided in the prior proceedings; (3) there was a full and fair opportunity to litigate the issue; and (4) the issue was necessary to decide the merits."  *Snoqualmie Indian Tribe v. Washington*, 8 F.4th 853, 864 (9th Cir. 2021) (quoting *Janjua v. Neufeld*, 933 F.3d

16

1061, 1065 (9th Cir. 2019)).  In this case, Defendants bear the burden to demonstrate that issue preclusion applies.  *See Davis & Cox v. Summa Corp.,* 751 F.2d 1507, 1518 (9th Cir. 1985), *superseded on other grounds by* 28 U.S.C. § 1961.

It is not disputed that both final judgment and the privity elements have been satisfied.  On the issue of whether the issue was actually litigated, Defendants maintain the arbitrator necessarily decided the issue because the Tribunal heard evidence and arguments from both sides and ruled on it.  (Dkt. No. 36-1 at 21.)  Plaintiffs disagree claiming that the issue of whether MedImpact misappropriated Dimensions' trade secrets was not decided in the arbitration, nor was it necessarily decided.  (Dkt. No. 42 at 18.)  The Court agrees with Plaintiffs.

In the arbitration, Dimensions counterclaimed against MI-HK and MIL asserting that the JVA and SLC were breached by their use of Dimensions' intellectual property, including "[███████████████████████████████████████ ███████  (*Id.* (UNDER SEAL).)  After the counterclaim was "████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████n March 6, 2019, Dimensions sought to withdraw the counterclaim and sought an order dismissing the counterclaim.  (Dkt. No. 45, Bennett Decl., Ex. 1, Partial Final Award on Liability ¶ 200.)  MedImpact opposed. (*Id.* ¶ 201.)  The Tribunal ruled that ████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████.  (*Id.* ¶¶ 202, 203(4).)  No analyses or conclusions were articulated on the counterclaim.

21-CV-2081-GPC-DEB

1    However, within the 109 pages of decision[9], the arbitrator commented on the

2    counterclaim.  The Arbitrator stated that the ████████████████████████████████

3    ████████████████████████████████████████████.  (*Id.* ¶ 96.)  In

4    assessing damages on liability, the Arbitrator explained that ████████████████

5    ████████████████████████████████████ (Dkt. No. 45, Bennett Decl.,

6    Ex. 2, Final Award ¶ 92, n. 53.)  Yet, on damages, he also stated that ████████

7    ████████████████████████████████████████████████████

8    ████████████████████████████████" (*Id.* ¶ 97.)  Based on

9    these ambiguous comments by the Arbitrator on the merits of the counterclaims, the

10   Court cannot make any implications or conclude that the counterclaim was decided or

11   necessarily decided.  Accordingly, the Court DENIES Defendants' motion to dismiss the

12   remaining claims under issue preclusion.  *See United States v. Johnson*, 256 F.3d 895,

13   915 (9th Cir. 2001) (*en banc*) ("Of course, not every statement of law in every opinion is

14   binding on later panels. Where it is clear that a statement is made casually and without

15   analysis, where the statement is uttered in passing without due consideration of the

16   alternatives, or where it is merely a prelude to another legal issue that commands the

17   panel's full attention, it may be appropriate to re-visit the issue in a later case.").

18   **E.    Shareholder Standing Rule**

19        On the shareholder standing rule, the Court will consider its applicability to the

20   DTSA, CUTSA and RICO claims.[10]  However, because the Court has dismissed the

21

22

23   _____

24   [9] The Partial Final Award on Liability was 75 pages and the Final Award was 34 pages.  (Dkt. No. 45,
     Ex. 1, Partial Final Award on Liability ¶ 200.)

25

26   [10] Defendants summarily argue that the shareholder standing rule applies to all causes of action in the
     complaint but does not address its application to the breach of fiduciary duty and conspiracy claims.
27   (Dkt. No. 36 at 23.)

28

21-CV-2081-GPC-DEB

1    DTSA and CUTSA causes of action as time barred, the Court only considers whether the

2    shareholder standing rule bars the RICO claim.

3          Defendants argue that the "shareholder standing rule" bars the claims raised by

4    Plaintiffs because IQVIA Inc. and IQVIA AG, as parents of Dimensions, cannot assert

5    the injuries of Dimensions.  (Dkt. No. 36-1 at 23-24.)  Defendants acknowledge that the

6    only alleged independent injury that supports standing by IQVIA is the benefit of the

7    bargain measure of damages that is a measure of damages for breach of contract and not

8    the tort claim for RICO violations.  (*Id.* at 24.)  In response, Plaintiffs only argue that

9    they have standing on the DTSA and the CUTSA claims and do not challenge the RICO

10   claim.  (Dkt. No. 42 at 20-21.)  Therefore, because Plaintiffs have failed to address their

11   RICO injuries, the Court GRANTS Defendants' motion to dismiss the RICO claim for

12   failing to allege shareholder standing as unopposed.[11]

13   **F.    Breach of Fiduciary Duty**

14         Defendants argue that the breach of fiduciary duty claim fails to state a claim

15   because, relying on Cayman law, Mr. Brown, as a board member and general manager of

16   the Joint Venture, did not owe a fiduciary duty to IQVIA AG and IQVIA Inc. because

17   they were not members of the Joint Venture.  (Dkt. No. 36-1 at 24-27.)  In particular, they

18   argue that there is no authority that "a director or officer owes fiduciary duties to his

19   company's shareholders' parent."  (*Id*. at 26.)  Plaintiffs dispute the application of

20   Cayman law on a choice of law analysis and argue that under California law, an officer or

21   director owes fiduciary duties to the subsidiary as well as the parent company and even if

22

23   ─────────────────

24   [11] Additionally, Defendants' argument that IQVIA Inc. has no damages since it is nothing more than a
     parent to IQVIA AG, (Dkt. No. 36-1 at 24), has not been addressed by Plaintiffs.  Plaintiffs have not
25   addressed the corporate relationship between IQVIA Inc. and Dimensions and the application of the
     shareholder standing rule to the parent of a parent.  In light of their failure to respond, the Court also
26   grants dismissal of the RICO claims as to IQVIA Inc.

27                                                        19

28                                                                                    21-CV-2081-GPC-DEB

1    Cayman law applied, it does not foreclose the existence of a fiduciary duty between an

2    officer or director and a shareholder's parent.[12]  (Dkt. No. 42 at 22, 25.)

3          Irrespective of the choice of law analysis, the parties do not appear to dispute that

4    the existence of a fiduciary duty is an element of a cause of action for breach of fiduciary

5    duty under California and Cayman law.   (Dkt. No. 36-1 at 26; Dkt. No. 42 at 22.)

6          The complaint claims that Mr. Brown, as a Board Member and General Manager

7    of the Joint Venture, "owed fiduciary obligations and duties of loyalty to Plaintiffs" and

8    was bound by his "fiduciary obligations and duties to act in the best interests of the Joint

9    Venture and Plaintiffs." (Dkt. No. 1, Compl. ¶ 135.)  Plaintiff IQVIA AG is the parent or

10   controlling shareholder of Dimensions.  (*Id.* ¶ 14.)  IQVIA Inc. is the parent or

11   controlling shareholder of IQVIA AG.  (*Id.* ¶ 1.)  In this case, the corporate entity was the

12   JV or MIA and the JV's shareholders were Dimensions, MI-HK and MIL.  (*Id.* ¶ 1 n.1.)

13   Therefore, under general corporate law, Mr. Brown owed a fiduciary duty to the JV, as

14   the corporation, and its shareholders, Dimensions, MI-HK and MIL. *See Guth v. Loft,*

15   *Inc.*, 5 A.2d 503, 510 (Del. 1939) (corporate officer and directors owe fiduciary duty to

16   the corporation and its stockholders).  The question is whether Mr. Brown owed a

17   fiduciary duty to the shareholder's parent, or in other words Dimensions' parents, IQVIA

18   AG and IQVIA Inc.

19         Defendants cite to cases that support a general proposition that "[a] fiduciary of a

20   subsidiary also owes a fiduciary duty to the subsidiary's parent corporation" and facially

21   appears to apply.  (Dkt. No. 42 at 22-23 (citing *Thomas Weisel Partners LLC v. BNP*

22

23   _____

24   [12] Plaintiffs also argue that the breach of fiduciary duty claim should survive because in the related case,
     Case No. 19cv1865-GPC(DEB), MedImpact alleged a breach of fiduciary duty claim on the same

25   relationship against Dr. Ghosheh and Mr Sadana as Board of Directors of MIA and to MedImpact as its

26   shareholder.  The Court disagrees.  First, one of the Plaintiffs in the related case is MIL, a member of
     MIA.  Second, no IQVIA Defendant moved to dismiss that claim based on this theory.  Plaintiffs cannot

27   simply rely on allegations in another complaint to support their claim.

                                              20

28                                                                        21-CV-2081-GPC-DEB

1   *Parabas*, No. C 07–6198 MHP, 2010 WL 1267744, at *5 (N.D. Cal. Apr. 1, 2010)

2   (director of subsidiary corporation who participated in management of corporation owed

3   fiduciary duty to subsidiary and its parent.); *PQ Labs, Inc. v. Qi,* No. 12–0450 CW, 2014

4   WL 334453, at *12 (N.D. Cal. Jan. 29, 2014) (employee owed fiduciary duty to

5   employer, a subsidiary of parent corporation, and the parent).)  However, in these cited

6   cases, the plaintiffs were officers or directors or employees of a wholly-owned

7   subsidiary, and therefore, they owed a fiduciary duty to the parent corporation.  Here, Mr.

8   Brown was not an officer or director of Dimensions.  By citing to inapposite caselaw,

9   Defendants appear to confuse the relationships involved.  In line with these cases, Mr.

10  Brown, an officer and director of the MIA, had a fiduciary duty to MIA, and if one

11  existed which it did not, he would have had a fiduciary duty to MIA's parent corporation.

12  Defendants have not provided any legal authority that Mr. Brown had a fiduciary duty to

13  IQVIA AG and IQVIA Inc., or in other words, a fiduciary duty to MIA's shareholder's

14  parent.  Accordingly, the Court GRANTS Defendants' motion to dismiss the breach of

15  fiduciary duty claim against Mr. Brown for failing to allege the existence of a duty under

16  California or Cayman law.

17  **G.    Conspiracy**

18       Defendants argue that the conspiracy claim is preempted by CUTSA and because

19  conspiracy is not a stand-alone cause of action, the claim must be dismissed.  (Dkt. No.

20  36-1 at 32-33.)  Plaintiffs disagree.  (Dkt. No. 42 at 29-30.)

21       "The elements of an action for civil conspiracy are the formation and operation of

22  the conspiracy and damage resulting to plaintiff from an act or acts done in furtherance of

23  the common design. . . . In such an action the major significance of the conspiracy lies in

24  the fact that it renders each participant in the wrongful act responsible as a joint tortfeasor

25  for all damages ensuing from the wrong, irrespective of whether or not he was a direct

26

27                                                    21

28                                                                        21-CV-2081-GPC-DEB

actor and regardless of the degree of his activity." *Applied Equip. Corp. v. Litton Saudia Arabia Ltd*., 7 Cal. 4th 503, 511 (Cal. 1994) (citation and quotation marks omitted). "Conspiracy is not a cause of action, but a legal doctrine that imposes liability on persons who, although not actually committing a tort themselves, share with the immediate tortfeasors a common plan or design in its perpetration." *Id.* at 510-11.   A conspiracy must be activated by the commission of an actual tort. *Id.* at 511.

Because the Court grants dismissal of all the causes of action, the conspiracy claim must also be dismissed. *See Jordan v. Consumer Plumbing Recovery Ctr*., CASE NO. 05-CV-1677 H (BLM), 2006 WL 8455412, at *3 (S.D. Cal. 2006) ("Without such an underlying tort, Plaintiff's conspiracy claim cannot persist.").  Therefore, the Court GRANTS Defendants' motion to dismiss the conspiracy claim.

**H.    Leave to Amend**

Leave to amend, whether or not requested by the plaintiff, should be granted unless amendment would be futile. *Schreiber Distrib. Co*., 806 F.2d at 1401.  While Plaintiffs do not seek leave to amend, the Court concludes that it would not be futile to allow leave to amend and GRANTS Plaintiffs leave to amend their complaint. *See id.*

<b>Conclusion</b>

Based on the reasoning above, the Court GRANTS Defendants' motion to dismiss all causes of action.  Plaintiffs are granted leave to file an amended complaint within 21 days of the filing date of this order.

IT IS SO ORDERED.

Dated:  April 15, 2022

Hon. Gonzalo P. Curiel
United States District Judge

21-CV-2081-GPC-DEB