1
2
3
4
5
6
7
8                    UNITED STATES DISTRICT COURT

9                  SOUTHERN DISTRICT OF CALIFORNIA

10

11  IQVIA INC., a Delaware corporation; and       Case No.:  21-CV-2081-GPC-DEB
    IQVIA AG, a Swiss company; and
12  DIMENSIONS HEALTHCARE LLC, a                   **ORDER GRANTING IN PART AND
    United Arab Emirates limited liability         DENYING IN PART DEFENDANTS'
13  company,                                       MOTION TO DISMISS FIRST
                                                   AMENDED COMPLAINT**
14
                                     Plaintiffs,   [REDACTED - ORIGINAL]
15                                                 **[FILED UNDER SEAL]**
    v.
16
                                                   **[Dkt. No. 78.]**
17  MEDIMPACT HEALTHCARE
    SYSTEMS, INC., a California
18  corporation; MEDIMPACT
    INTERNATIONAL LLC, a California
19  limited liability company; MEDIMPACT
    INTERNATIONAL HONG KONG,
20  LTD., a Hong Kong corporation; and
    DALE BROWN, individually,
21
22                                   Defendants.
23

24          Before the Court is Defendants' motion to dismiss pursuant to Federal Rule of

25  Civil Procedure 12(b)(6) and 12(b)(1).  (Dkt. No. 78.)  Plaintiffs filed an opposition.

26  (Dkt. No. 82.)  Defendants filed a reply.   (Dkt. No. 85.)  The Court finds that the matter

27                                           1

28                                                          21-CV-2081-GPC-DEB

is appropriate for decision without oral argument pursuant to Local Civ. R. 7.1(d)(1). Based on the reasoning below, the Court GRANTS in part and DENIES in part Defendants' motion to dismiss

## Procedural Background

On December 13, 2021, Plaintiffs IQVIA Inc. and IQVIA AG (collectively "IQVIA") filed a complaint for 1) misappropriation of trade secrets under the Defend Trade Secrets Act ("DTSA"), 18 U.S.C. § 1836; 2) misappropriation of trade secrets under the California Uniform Trade Secrets Act ("CUTSA"); and 3) violations of Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(c) against Defendants MedImpact Healthcare Systems, Inc. and Dale Brown ("Mr. Brown"); and 4) breach of fiduciary duty and duty of loyalty; and 5) civil conspiracy against Mr. Brown.  (Dkt. No. 1, Compl.)  On April 15, 2022, the Court granted Defendants' motion to dismiss with leave to amend.  (Dkt. No. 59.)

On May 6, 2022, Plaintiffs IQVIA Inc., IQVIA AG and Dimensions Healthcare LLC ("Dimensions") (collectively "Plaintiffs") filed the operative first amended complaint ("FAC") for 1) misappropriation of trade secrets under the DTSA; 2) misappropriation of trade secrets under CUTSA; and 3) violations of RICO against Defendants MedImpact Healthcare Systems, Inc. ("MHSI"), MedImpact International LLC ("MIL") and MedImpact International Hong Kong Ltd. ("MI-HK") (collectively "MedImpact"), and Mr. Brown; as well as 4) breach of fiduciary duty; and 5) civil conspiracy against Mr. Brown.  (Dkt. No. 68, FAC)

The complaint arises out of litigation in a related case, *MedImpact Healthcare Systems, Inc. et al. v. IQVIA Holdings Inc. et al.* in Case No. 19cv1865-GPC(DEB) ("Related Case") in which MedImpact alleges trade secret misappropriation and related claims against IQVIA Inc., IQVIA AG, IQVIA Ltd. and other individual defendants.  In that case, the complaint was filed on September 26, 2019, (*id.*, Dkt. No. 1), and an answer

1     was filed on September 10, 2020, (*id.*, Dkt. No. 131), with an amended answer filed on

2     October 15, 2020, (*id.*, Dkt. No. 134).  The answer and amended answer included the

3     affirmative defense of unclean hands.  (*Id.*, Dkt. No. 131 at 27[1]; *Id.,* Dkt. No. 134 at 27.)

4     During discovery, the unclean hands defense alleged that MedImpact schemed to steal

5     IQVIA's drug-to-diagnosis indication and contraindication edits trade secrets.  (*Id.*, Dkt.

6     No. 357, Swedlow Decl., Ex. 2, IQVIA's Second Suppl. Response to Pls' Interrog. No. 8

7     at 26-30 (UNDER SEAL).)

8            On September 1, 2021, IQVIA filed a motion for leave to file a second amended

9     answer to add counterclaims, now alleged in the FAC, which the Court denied on

10    November 16, 2021.  (*Id.*, Dkt. Nos. 305, 360.)  The Court found that IQVIA failed to

11    demonstrate diligence under Federal Rule of Civil Procedure 16 in seeking to file the

12    proposed pleading because they knew of the proposed claims as far back as February

13    2018 when similar counterclaims were raised in the prior arbitration.[2]  (*Id.*)  Because the

14    Court denied the request to file a counterclaim, on December 13, 2021, IQVIA Inc. and

15    IQVIA AG filed a complaint, in this case, raising the same claims as the proposed

16    counterclaim in the Related Case.  (Dkt. No. 1, Compl.)

17                                    **Factual Background**

18           Plaintiff IQVIA AG has its principal place of business in Switzerland and is wholly

19    owned by Plaintiff IQVIA Inc., which has its principal place of business in Plymouth

20

21

22

23    _____

24    [1] Page numbers are based on the CM/ECF pagination.

25    [2] On January 23, 2018, MIL and MI-HK filed claims in arbitration against Dimensions with the Dubai
      International Financial Centre-London Court of International Arbitration ("DIFC-LCIA") for breaches
26    of the terms of the parties' Joint Venture Agreement ("JVA") and Services and License Contract
      ("SLC") with a Partial Final Award on Liability on April 16, 2019 and a Final Award on July 24, 2019.
27    (Dkt. No. 87, Bennett Decl., Exs. 1, 2 (UNDER SEAL).)

28

Meeting, Pennsylvania.[3]  (Dkt. No. 68, FAC ¶¶ 13, 14.)  Plaintiff Dimensions Healthcare LLC ("Dimensions") is incorporated in the United Arab Emirates ("UAE").  (*Id.* ¶ 15.) IQVIA AG is the controlling beneficial owner of Dimensions and has the exclusive power to control Dimensions' operations.  (*Id.* ¶¶ 14, 15.)  Defendant MHSI is a California corporation with its principal place of business in San Diego. California.  (*Id.* ¶ 16.)  MHSI wholly owns its subsidiary MIL, and MIL, in turn, wholly owns MI-HK. (*Id.*)  Defendant Dale Brown was the former President of MHSI, former President of MIL, and a former Board member and General Manager of MedImpact Arabia ("MIA"). (*Id.* ¶ 19.)

In this case, Plaintiffs allege that, since 2011, Defendants schemed to steal confidential and proprietary trade secrets from Dimensions through a Joint Venture ("JV"), also called MIA, between MIL and Dimensions entered on February 1, 2012.  (*Id.* ¶ 1 & n.1.)  On January 1, 2014, MIL transferred its interest in the JV to MI-HK.  (*Id.* n.1.)  Specifically, Plaintiffs claim that MedImpact sought to build a new "██████ ██████" or a "████████████████████████ with web services to take globally by incorporating Plaintiffs' trade secrets into MedImpact's existing platform.  (*Id.* ¶ 2 (UNDER SEAL).)

At issue are Plaintiffs' confidential and proprietary drug-to-diagnosis indication and contraindication edits.  (*Id.* ¶ 3.)  "Drug-to-diagnosis <u>indication</u> edits provide a rejection alert when a patient requests to fill a prescription for a medication that is not used to treat that patient's medical diagnosis. For example, an indication edit would reject

---

[3] In their opposition, Plaintiffs assert IQVIA Inc. recently moved its headquarters to New Jersey.  (Dkt. No. 82 at 23 n. 12.)

[4] "A PBM platform is a platform that allows patients to obtain insurance approvals for prescribed medicines through online, real-time insurance coverage approvals or denials for prescribed medicines, based upon clinical algorithms, plan design rules, and member eligibility."  (Dkt. No. 68, FAC ¶ 2, n. 2.)

the incorrect prescription of an antibiotic—used to treat bacterial infections—for a viral infection, such as influenza.  Relatedly, drug-to-diagnosis <u>contraindication</u> edits provide a rejection alert when a patient requests to fill a prescription for a medication that a result in an adverse drug event if the medication is taken by a patient with certain medical conditions." (*Id.*)  These edits save lives and minimize errors, fraud, waste, and/or abuse of medications and drive savings.  (*Id.* ¶¶ 23-25.)

MedImpact did not have the ability to offer these edits before partnering with Dimensions in the JV and instead of investing resources to develop its own drug-to-diagnosis indication and contraindication edits, it took a "shortcut" and stole Plaintiffs' trade secrets.  (*Id.* ¶ 5.)  After the JV was terminated in 2017, MedImpact had to decide how to proceed without Dimensions' trade secrets concerning edits and retained ███████ ████████████████████████████████████████████████████ .  (*Id.* ¶¶ 9, 45-48 (UNDER SEAL).)  Plaintiffs allege that ███████████████ █████████████" is based on Plaintiffs' trade secrets.  (*Id.* ¶ 91.)  On April 5, 2018, an MIL employee instructed ████████ that ████████████████████████████ ████████████████████████████████████████████████████ ████████ (*Id.* ¶ 50.)  That employee in June 2018 ████████████████████ ██████████████████████████████████████████████████████████████ ████████████████████████████████████████ (*Id.* ¶ 51.)  In June 2018, other statements show that MedImpact was using Dimensions' trade secrets. (*Id.* ¶ 52.)

IQVIA claims that Defendants misused the partnership with Dimensions for their own gain and engaged in years-long theft of those trade secrets and exploited that theft by offering and/or providing these edits for sale in the United States, Australia, South Africa, Canada, Turkey, ████████████████████ as well as other locations.  (*Id.* ¶ 8 (UNDER SEAL).)  The theft continued even after IQVIA AG acquired Dimensions in

21-CV-2081-GPC-DEB

2016.  (*Id.* ¶ 9.)  Defendants avoided years of research and development time and saved tens of millions of dollars.  (*Id.* ¶ 10.)  Moreover, Defendants never disclosed that they had been stealing the trade secrets and offering them for sale, and in fact, they actively concealed these facts.  (*Id.*)  Further, Mr. Brown engaged in unlawful conduct while serving on the Board and as General Manager of the JV.  (*Id.* ¶ 11.)

## Discussion

## A.   Legal Standard as to Federal Rule of Civil Procedure 12(b)(6)

Federal Rule of Civil Procedure ("Rule") 12(b)(6) permits dismissal for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  Dismissal under Rule 12(b)(6) is appropriate where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory.  *See Balistreri v. Pacifica Police Dep't.,* 901 F.2d 696, 699 (9th Cir. 1990).  Under Federal Rule of Civil Procedure 8(a)(2), the plaintiff is required only to set forth a "short and plain statement of the claim showing that the pleader is entitled to relief," and "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests."  *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007).

A complaint may survive a motion to dismiss only if, taking all well-pleaded factual allegations as true, it contains enough facts to "state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id.*  "In sum, for a complaint to survive a motion to dismiss, the non-conclusory factual content, and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief."  *Moss v. U.S. Secret Serv.,* 572 F.3d 962, 969 (9th Cir. 2009)

1   (quotations omitted).  In reviewing a Rule 12(b)(6) motion, the Court accepts as true all

2   facts alleged in the complaint, and draws all reasonable inferences in favor of the

3   plaintiff.  *al-Kidd v. Ashcroft*, 580 F.3d 949, 956 (9th Cir. 2009).

4   **B.   Request for Judicial Notice**

5        Defendants filed a request for judicial notice of Exhibits 1, 2, and 11 through 16,

6   documents filed or submitted in the prior arbitration, and Exhibits 3 and 4, publicly filed

7   records of the Cayman Islands.  (Dkt. No. 78-2, Ds' RJN.)  Plaintiffs did not oppose.

8        On a Rule 12(b)(6) motion, the Court may not consider documents outside the

9   complaint.  *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001).  The Ninth

10  Circuit recognizes two exceptions to this general rule.  First, documents which are

11  properly attached to the complaint may be considered and if "the documents are not

12  physically attached to the complaint, they may be considered if the documents'

13  "authenticity . . . is not contested" and "the plaintiff's complaint necessarily relies" on

14  them.  *Id.* (citing *Parrino v. FHP, Inc*., 146 F.3d 699, 705-06 (9th Cir. 1998)).  Second, a

15  court may take judicial notice of "matters of public record."  *Id.*; *see* Fed. R. Evid. 201.

16       Under the first exception, the incorporation by reference doctrine, a document may

17  be considered by the court "if the plaintiff refers extensively to the document or the

18  document forms the basis of the plaintiff's claim."  *United States v. Ritchie*, 342 F.3d 903,

19  908 (9th Cir. 2003).  "The defendant may offer such a document, and the district court

20  may treat such a document as part of the complaint, and thus may assume that its contents

21  are true for purposes of a motion to dismiss under Rule 12(b)(6)."  *Id.*  However, a court

22  is not "required to accept as true allegations that contradict exhibits attached to the

23  Complaint or matters properly subject to judicial notice, or allegations that are merely

24  conclusory, unwarranted deductions of fact, or unreasonable inferences."  *Daniels-Hall v.

25  Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010).

26

27                                          7

28

1    Plaintiffs seek judicial notice of certain documents that were either submitted or
2 awarded during the prior arbitration, (Dkt. No. 78-2, Ds' RJN, Exs. 1, 2, 11-16).  Because
3 the Court "may take notice of proceedings in other courts, both within and without the
4 federal judicial system, if those proceedings have a direct relation to matters at issue",
5 *U.S. ex rel. Robinson Rancheria Citizens Council v. Borneo, Inc*., 971 F.2d 244, 248 (9th
6 Cir. 1992), the Court GRANTS Defendants' unopposed request for judicial notice of
7 these documents.  Additionally, the Court GRANTS Defendants' unopposed request for
8 judicial notice of Exhibits 3 and 4 as they are publicly filed records of the Cayman
9 Islands.  *See* Fed. R. Evid. 201.

10 **C.    DTSA/CUTSA - Statute of Limitations**

11    Defendants move to dismiss the DTSA and the CUTSA claims as time barred by
12 the three-year statute of limitations, and, further, submit that tolling under fraudulent
13 concealment or equitable estoppel cannot save the claims.  (Dkt. No. 78-1 at 14-21.)
14 Plaintiffs respond that fraudulent concealment or equitable estoppel, and equitable tolling
15 apply to make the DTSA and CUTSA claims timely.  (Dkt. No. 82 at 10-20.)

16    On a motion to dismiss based on the statute of limitations, the Court must assess
17 whether "the running of the statute is apparent on the face of the complaint."  *Huynh v.*
18 *Chase Manhattan Bank*, 465 F.3d 992, 997 (9th Cir. 2006) (quoting *Jablon v. Dean*
19 *Witter & Co*., 614 F.2d 677, 682 (9th Cir. 1980) ("When a motion to dismiss is based on
20 the running of the statute of limitations, it can be granted only if the assertions of the
21 complaint, read with the required liberality, would not permit the plaintiff to prove that
22 the statute was tolled.")).  Here, because the Court grants Defendants' request for judicial
23 notice, it will consider the allegations in the complaint as well as the judicially noticed
24 documents in determining whether the statute of limitations has run.
25 / / /
26 / / /
27
28

21-CV-2081-GPC-DEB

### 1. Accrual Date

The DTSA and CUTSA impose a three-year statute of limitations.  18 U.S.C. § 1836(d)[5]; Cal. Civ. Code § 3426.6.[6]  They also provide that "a continuing misappropriation constitutes a single claim of misappropriation."  18 U.S.C. § 1836(d); *see* Cal. Civ. Code § 3426.6 ("a continuing misappropriation constitutes a single claim").

Defendants argue that both causes of action accrued on February 20, 2018 when Dimensions filed a counterclaim in the arbitration against MIL and MI-HK alleging they breached the JVA and SLC by using its "Diagnosis-to-Drug Indication and Contraindication checks."  (Dkt. No. 78-1 at 13.)  They maintain that February 20, 2018 is when Plaintiffs should have discovered and did discover the alleged misappropriation that is asserted in the FAC.  (*Id.*)  In their opposition, Plaintiffs do not directly challenge the accrual date of February 20, 2018[7] but instead argue that their trade secret claims are timely because the limitations period should be tolled, from the filing of the counterclaim in the arbitration on February 20, 2018 to at least the dismissal of the counterclaim on April 16, 2019, during the time period when Defendants hindered Plaintiffs' diligence by blocking discovery for these claims.  (Dkt. No. 82 at 10.)

---

[5] "(d) Period of limitations.--A civil action under subsection (b) may not be commenced later than 3 years after the date on which the misappropriation with respect to which the action would relate is discovered or by the exercise of reasonable diligence should have been discovered. For purposes of this subsection, a continuing misappropriation constitutes a single claim of misappropriation." 18 U.S.C. § 1836(d).

[6] "An action for misappropriation must be brought within three years after the misappropriation is discovered or by the exercise of reasonable diligence should have been discovered."  Cal. Civ. Code § 3426.6

[7] Even though Plaintiffs implicitly appear to reject February 20, 2018 as the accrual date, they, in the FAC and opposition, do not affirmatively assert an accrual date of when the statute of limitations should have begun to run on the DTSA and CUTSA claims.

21-CV-2081-GPC-DEB

1    Therefore, relying on the accrual date of February 20, 2018[8], the DTSA and

2    CUTSA causes of action, filed on December 13, 2021, are untimely unless a theory of

3    tolling applies to excuse the untimely filing.

4         **2.      Equitable Estoppel/Fraudulent Concealment**

5         "The doctrine of equitable estoppel, often referred to as fraudulent concealment, is

6    based on the principle that a party 'should not be allowed to benefit from its own

7    wrongdoing.'"   *Estate of Amaro v. City of Oakland*, 653 F.3d 808, 813 (9th Cir. 2011)

8    (quoting *Collins v. Gee West Seattle LLC*, 631 F.3d 1001, 1004 (9th Cir. 2011)).  For

9    equitable estoppel, a plaintiff must plead "(1) knowledge of the true facts by the party to

10   be estopped, (2) intent to induce reliance or actions giving rise to a belief in that intent,

11   (3) ignorance of the true facts by the relying party, and (4) detrimental reliance."   *Id.*

12   (quoting *Bolt v. United States*, 944 F.2d 603, 609 (9th Cir. 1991)).  "[E]quitable estoppel

13   applies when a plaintiff who knows of his cause of action reasonably relies on the

14   defendant's statements or conduct in failing to bring suit."   *Stitt v. Williams,* 919 F.2d

15   516, 522-23 (9th Cir. 1990) ("This doctrine may be available when the defendant lulls the

16   plaintiff into failing to bring suit.").  California applies the similar equitable estoppel

17   factors as federal law.   *Lukovsky v. City & Cnty. of San Francisco*, 535 F.3d 1044, 1051-

18   52 (9th Cir. 2008) ("California equitable estoppel is thus similar to and not inconsistent

19   with federal common law, as both focus on actions taken by the defendant which prevent

20   the plaintiff from filing on time.").

---

[8] In the prior order, the Court had previously noted, based on the complaint and the judicially noticed documents, that on February 20, 2018, Dimensions was armed with some evidence to support counterclaims in the arbitration that Defendants were engaged in some sort of misappropriating conduct concerning their intellectual property, including "Diagnosis-to Drug Indication and Contraindication checks."  (Dkt. No. 59 at 14)

In *Johnson v. Henderson*, 314 F.3d 409, 414 (9th Cir. 2002), the Ninth Circuit also noted that:

> [a] finding of equitable estoppel rests on the consideration of a non-exhaustive list of factors, including: (1) the plaintiff's actual and reasonable reliance on the defendant's conduct or representations, (2) evidence of improper purpose on the part of the defendant, or of the defendant's actual or constructive knowledge of the deceptive nature of its conduct, and (3) the extent to which the purposes of the limitations period have been satisfied.

*Id.* (quoting *Santa Maria v. Pacific Bell*, 202 F.3d 1170, 1176 (9th Cir. 2000)).

Even though the Ninth Circuit has referred to equitable estoppel as fraudulent concealment, *see Estate of Amaro*, 653 F.3d at 813; *Lukovsky*, 535 F.3d at 1051 ("Equitable estoppel, on the other hand, focuses primarily on actions taken by the defendant to prevent a plaintiff from filing suit, sometimes referred to as 'fraudulent concealment'"); *Johnson*, 314 F.3d at 414 ("Equitable estoppel, then, may come into play 'if the defendant takes active steps to prevent the plaintiff from suing in time'—a situation that the Seventh Circuit terms 'fraudulent concealment.'"), the elements to support equitable estoppel are distinct from fraudulent concealment.

Specifically, a plaintiff seeking to rely on fraudulent concealment must "plead facts showing that [the defendant] affirmatively misled it, and that [the plaintiff] had neither actual nor constructive knowledge of the facts giving rise to its claim despite its diligence in trying to uncover those facts." *Hexcel Corp. v. Ineos Polymers, Inc*., 681 F.3d 1055, 1060 (9th Cir. 2012). "[F]raudulent concealment . . . requires a showing . . . the plaintiff was, in fact, ignorant of the existence of his cause of action." *Id.* (quoting *Wood v. Santa Barbara Chamber of Commerce, Inc*., 705 F.2d 1515, 1521 (9th Cir. 1983)). Moreover, allegations of fraudulent concealment must be pled with particularity. *Conmar Corp. v. Mitsui & Co. (USA), Inc.*, 858 F.2d 499, 502 (9th Cir. 1988) ("Conclusory statements are not enough."). Under California law, fraudulent

1   concealment requires a showing of "(1) when the fraud was discovered; (2) the

2   circumstances under which it was discovered; and (3) that the plaintiff was not at fault for

3   failing to discover it or had no actual or presumptive knowledge of facts sufficient to put

4   him on inquiry." *Mills v. Forestex Co.*, 108 Cal. App. 4th 625, 641 (2003).  Although "it

5   is generally inappropriate to resolve the fact-intensive allegations of fraudulent

6   concealment at the motion to dismiss stage," *In re Rubber Chemicals Antitrust Litig.*, 504

7   F. Supp. 2d 777, 789 (N.D. Cal. 2007), Plaintiffs must allege specific factual allegations

8   of fraudulent concealment to survive a motion to dismiss,  *In re Transpacific Passenger*

9   *Air Transp. Antitrust Litig.,* No. C 07–5634 CRB, 2011 WL 1753738, at *20–21 (N.D.

10  Cal. May 9, 2011).

11          In their briefing, the parties conflate the elements of equitable estoppel and

12  fraudulent concealment by raising arguments on certain elements of each tolling doctrine.

13  Defendants move to dismiss arguing that the third element, "ignorance of the true facts

14  by the relying party", of equitable estoppel articulated in *Estate of Amaro* cannot be met

15  as well as the first and third non-exhaustive factors, "reasonable reliance", and "extent to

16  which the purposes of the limitations period have been satisfied" articulated in *Johnson*

17  cannot be satisfied.  (Dkt. No. 78-1 at 14.)  Plaintiffs oppose arguing that they have

18  sufficiently alleged the elements of equitable estoppel to make their trade secrets claims

19  timely under *Estate of Amaro*[9] and they oppose Plaintiffs' argument on the two non-

20  exhaustive factors of *Johnson*.  (Dkt. No. 82 at 15.[10])  In reply, Defendants maintain that

21

22

23   _____

24  [9] Defendants do not reply to Plaintiffs' argument that the first, second and fourth elements of equitable

25  estoppel established in *Estate of Amaro*.  As such, these factors are not in dispute and the Court's
    analysis is not needed.

26  [10] Plaintiffs cite to *Estate of Amaro* for the elements for "fraudulent concealment"; however, that case

27  addressed equitable estoppel.  (*See* Dkt. No. 82 at 15.)

28

                                                                        21-CV-2081-GPC-DEB

Plaintiffs had constructive knowledge about the trade secret issues since at least February 2018 and did not lose that constructive knowledge.  (Dkt. No. 85 at 7-8.)

### a.     Ignorance of the True Facts by the Relying Party

On the third *Estate of Amaro* factor, "ignorance of the true facts by the relying party", the Ninth Circuit reiterated precedent stating that "a plaintiff can know, or suspect, that she has a cause of action and still be 'ignorant of the true facts' of the case such as "when a plaintiff who knows of his cause of action reasonably relies on the defendant's statements or conduct in failing to bring suit."  *Estate of Amaro*, 653 F.3d at 813 (quoting *Stitt v. Williams*, 919 F.2d 516, 522 (9th Cir. 1990)).  In other words, "the focus of the equitable estoppel analysis is not whether the plaintiff *knew* she had a cause of action—or even pursued some other form of litigation based on that knowledge—but whether the defendant's fraudulent concealment or misrepresentation deprived the plaintiff of a full understanding of the true facts, and thus, dissuaded the plaintiff from filing the claim at issue within the limitations period."  *Id.*

Here, Defendants maintain that Plaintiffs had at least constructive knowledge of the initial act of misappropriation that Defendants had incorporated and adopted the ability to manage diagnosis-to-drug indication and contraindication edits since at least February 2018.  (Dkt. No. 78-1 at 14-15.)  Plaintiffs argue that the statute of limitations should be tolled for about fourteen months from February 20, 2018, the date the counterclaim was filed in the arbitration to at least April 16, 2019, the date they withdrew the counterclaim based on Defendants' conduct in blocking or hindering discovery of the "true facts" to support their current claims.  (Dkt No. 82 at 10.)

After a careful review of the allegations in the FAC and the judicially noticed documents, the Court concludes that Plaintiffs have sufficiently alleged equitable estoppel to survive a motion to dismiss based on Defendants' alleged conduct in blocking, hindering and affirmatively misrepresenting facts during the arbitration.  *See*

21-CV-2081-GPC-DEB

1   *Johnson*, 314 F.3d at 414 ("Equitable estoppel, then, may come into play "if the

2   defendant takes active steps to prevent the plaintiff from suing in time").

3          On January 23, 2018, MIL and MI-HK filed claims in arbitration against

4   Dimensions with the DIFC-LCIA for breaches of the terms of the parties' JVA and SLC

5   with a Partial Final Award on Liability on April 16, 2019 and a Final Award on July 24,

6   2019.  (Dkt. No. 87, Bennett Decl., Exs. 1, 2 (UNDER SEAL).)  According to the FAC,

7   during the arbitration, on February 20, 2018, Dimensions filed a counterclaim for breach

8   of contract against MIL and MI-HK for using Dimensions' "Diagnosis-to-Drug

9   Indication and Contraindication checks."  (Dkt. No. 68, FAC ¶ 82 (UNDER SEAL).)

10  Plaintiffs allege that at the time when the counterclaims were filed, they did not have

11  actual or constructive knowledge of the underlying facts or a Rule 11[11] basis to file their

12  trade secrets claims.  (*Id.* ¶ 80.)  It was not until August 2021 when MedImpact produced

13  documents in the Related Case of *MedImpact v. IQVIA*, 19cv1865-GPC(DEB) that

14  Plaintiffs procured the evidence through discovery.  (*Id.*)  According to the FAC, prior to

15  the discovery in the Related Case, Plaintiffs "did not have actual or constructive

16  knowledge that MedImpact was developing a new product to include drug-to-diagnosis

17  edits stolen from Plaintiffs (███████████); that Plaintiffs' drug-to-diagnosis edits had been

18  shared with ██████████████████); that MedImpact U.S.'s domestic PBM engine

19  included drug-to-diagnosis edits stolen from (sic) MedImpact; or that MedImpact was

20  offering Plaintiffs' drug-to-diagnosis edits for sale."  (*Id.* ¶ 89; *see also id.* ¶ 81)

21         Plaintiffs explain that prior to the evidence procured in August 2021, they did not

22  know the specifics that MedImpact was using their stolen trade secrets of drug-to-

23  diagnosis edits to develop ███████████that these trade secrets had been shared with

24  ────────────────────

25  [11] "Rule 11 imposes a duty on attorneys to certify that they have conducted a reasonable inquiry and
26  have determined that any papers filed with the court are well grounded in fact, legally tenable, and "not
    interposed for any improper purpose."  *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 393 (1990).

27                                                14

28                                                                                    21-CV-2081-GPC-DEB

1   ███████ and they were offering Plaintiffs' drug-to-diagnosis edits for sale.  (*Id.*)  Instead,

2   Plaintiffs allege the counterclaim in the arbitration concerned MedImpact's U.S.'s

3   domestic PBM platform, did not relate to ███████ and they only knew at the time that

4   MedImpact's domestic PBM platform would be capable of performing diagnosis-editing

5   in the future.  (*Id.* ¶¶ 83, 84.)  In other words, Plaintiffs did not understand the full scope

6   of Plaintiffs' intended scheme to misappropriate their trade secrets.  The FAC also alleges

7   that the arbitration counterclaim was broad and included not only the drug-to-diagnosis

8   edits but also other issues related to "web services, electronic prescribing capabilities, and

9   controlled medications, among other things."  (*Id.* ¶ 85.)  As such, when the counterclaim

10  was filed in the arbitration, Plaintiffs claim they did not have actual or constructive

11  knowledge of the details of MedImpact's misappropriation scheme.

12      Plaintiffs allege that Dimensions was "highly diligent" in pursuing the

13  counterclaim in arbitration but MedImpact refused and blocked discovery into inspecting

14  ███████ and concealed evidence of its misuse of Plaintiffs' drug-to-diagnosis trade

15  secrets during the entirety of the arbitration.  (*Id.* ¶¶ 95, 96, 97, 98.)  MedImpact's refusal

16  or resistance to discovery sought by Dimensions was stated in Dimensions' expert reports

17  dated December 14, 2018, January 17, 2019, February 12, 2019 and by the testimony of

18  Dimensions' expert on February 24, 2019.  (*Id.* ¶ 95.)  In fact, MedImpact blocked

19  Dimensions from inspecting ███████  (*Id.* ¶ 98.)

20      In addition, from January 23, 2018 to July 24, 2019, the duration of the arbitration,

21  Plaintiffs assert that MedImpact and Mr. Brown falsely and repeatedly denied that

22  MedImpact had misused Dimensions' drug-to-diagnosis indication and contraindication

23  edits.  (*Id.* ¶¶ 99a-99k.)  The FAC points to pleadings, arguments, witness statements,

24  expert reports and sworn statements by Mr. Brown affirmatively denying or asserting that

25  MedImpact did not perform drug-indication edits outside the JV or that MedImpact

26  would not have use any of Dimensions' proprietary drug-to-diagnosis edits.  (*Id.*)  The

27

28

15

1  FAC alleges false statements on September 23, 2018, December 14, 2018, January 3,

2  2019, and February 11, 2019.  (*Id.*)

3        Based on this, the FAC alleges that Defendants fraudulently concealed their misuse

4  of Plaintiffs' trade secrets by knowingly making false statements and concealing highly

5  relevant evidence.  (*Id.* ¶ 100.)  They maintain that Dimensions justifiably relied on

6  MedImpact's representations, and on March 6, 2019, it withdrew all its counterclaim in

7  the arbitration.  (*Id.* ¶ 101.)  Dimensions wrote, ███████████████████████

8  ████████████████████████████████████████████████████████████████

9  ████████████████████████████████████████████████

10 ████████████████████  (*Id.* (UNDER SEAL).)  But Dimensions informed

11 the arbitrator that it "████████████████████████████████████████████

12 ████████████████████████████████████████."  (*Id.* ¶ 102.)

13 According to Plaintiffs, at the time Dimensions withdrew its counterclaim, it had no basis

14 to seek relief.  (*Id.*)

15       In the withdrawal, Dimensions also stated "[████████████████████████

16 ████████████████████████████████████████████████

17 ████████████████████████████████████████████████████████████

18 ████████████████████████████████████████████████████ but

19 this statement did not provide Plaintiffs with actual or constructive notice of any alleged

20 misappropriation because it references potential business in ████████  (*Id.* ¶ 104.)

21 Moreover, reference to the PBM platform offered in ██████ makes no reference to drug-

22 to-diagnosis edits and the system had not yet been built.  (*Id.*)

23       Therefore, at the time of withdrawal on March 6, 2019, Plaintiffs claim that they

24 still did not have actual or constructive knowledge that "Medimpact was developing a

25 new product to include drug-to-diagnosis edits stolen from Plaintiffs (████████; that

26 Plaintiffs' drug-to-diagnosis edits had been shared with ████████████████

27

28

21-CV-2081-GPC-DEB

1    that MedImpact U.S.'s domestic PBM engine included drug-to-diagnosis edits stolen

2    from MedImpact; or that MedImpact was offering Plaintiffs' drug-to-diagnosis edits for

3    sale." (*Id.* ¶ 103.)   Plaintiffs also suggest that even if they had notice of the claims at the

4    time of withdrawal on March 6, 2019 or during the arbitration hearing held from

5    February 18, 2019 to February 24, 2019, these dates were within the three-year statute of

6    limitations period.  (*Id.* ¶ 104.)

7            On February 21, 2019, Yousef Ghosheh of Dimensions testified during the

8    arbitration that the ███████████ the name of the file sent by MedImpact to CamelR

9    potentially including Dimensions' trade secrets, "█████████████████████████

10   ████████████████", but MedImpact refused to disclose the ███████ during

11   discovery.  (*Id.* ¶ 105.)  The FAC complains that even if Yousef Ghosheh's testimony put

12   Plaintiffs on notice of a claim, it is within the statute of limitations period.  (*Id.*)

13          The FAC alleges that despite Dimensions' diligence in timely pursuing these

14   claims against MedImpact during the arbitration, Plaintiffs could not have discovered and

15   did not discover the alleged claims until the summer of 2021 during discovery in the

16   Related Case due to MedImpact's false statements and concealment in the arbitration.

17   (*Id.* ¶ 106.)

18          On September 26, 2019, MedImpact filed the complaint in the Related Case.  (*Id.* ¶

19   107.)  IQVIA filed an answer asserting an unclean hands defense based on MedImpact's

20   misappropriation of the drug-to-diagnosis edits, among other things.  (*Id.*)  Plaintiffs

21   allege that at the time the complaint was filed in the Related Case, they did not have a

22   basis under Rule 11 to file a counterclaim against MedImpact related to the drug-to-

23   diagnosis edits.  (*Id.* ¶ 108.)  IQVIA Inc. and IQVIA AG served discovery requests

24   regarding their unclean hands defense, and documents were not produced by MedImpact

25   until May 17, 2021 and more than half of the documents were produced on or after

26   August 6, 2021.  (*Id.* ¶¶ 109, 110.)  In fact, in a March 2021 discovery response, IQVIA

27

28

1  Inc. and IQVIA AG withdrew their unclean hands defense due to the lack of a basis for
2  the defense at the time.  (*Id*. ¶ 111.)

3        As such, Plaintiffs did not learn about MedImpact's April 2018 instruction to
4  ███████  upload Plaintiffs' drug-to-diagnosis trade secrets into ███████ until August
5  6, 2021.  (*Id*. ¶ 112.)  This instruction was made during the arbitration proceedings but
6  was concealed by MedImpact.  (*Id*.)  The FAC explains that it was during depositions in
7  September and October 2021 that Plaintiffs learned that MedImpact was offering
8  ███████ which incorporated Defendants' drug-to-diagnosis trade secrets to customers
9  outside the Territory of the JV.  (*Id*.)  Moreover, the misappropriating conduct post-date
10  the arbitration because it was not until a October 12, 2021 court filing in the Related Case
11  that Plaintiffs learned that ███████ a "new product that will be used in the UAE"
12  and had current prospective clients.  (*Id*.)  Therefore, Plaintiffs allege they could not have
13  discovered these facts any earlier despite due diligence.  (*Id*. ¶ 113.)  Within three weeks
14  of learning of MedImpact's April 2018 instruction, Plaintiffs sought leave to file a
15  counterclaim in the Related Case.  (*Id*. ¶ 115.)  Once the Court denied the request for
16  leave to file a counterclaim, Plaintiffs filed their complaint in this case within one week.
17  (*Id*.)

18        Based on the detailed, factual allegations presented in the FAC concerning
19  Plaintiffs' diligence and MedImpact's attempt to block and hinder discovery into the
20  underlying facts to support the misappropriation trade secret claims, the Court concludes
21  that Plaintiffs have sufficiently alleged "ignorance of the true facts by the relying party"
22  to support equitable estoppel to stop the clock and toll the statute of limitation during the
23  period of the arbitration, from February 20, 2018 to at least March 6, 2019 when
24  Plaintiffs withdrew the counterclaim.  *See McMahon v. Valenzuela*, Case No. 2:14-cv-
25  02085-CAS(AGRx), 2015 WL 5680305, at *13 (C.D. Cal. Sept. 24, 2015) ("'[t]olling' in
26  the context of the equitable estoppel doctrine 'refers to suspending or stopping the

27

28

running of a statute of limitations' and 'is analogous to a clock stopping, then restarting'").  Even though Plaintiffs suspected the initial misappropriation at the time Dimensions filed the counterclaim in the arbitration, Plaintiffs have alleged Defendants' conduct prevented and dissuaded Plaintiffs from learning and knowing the true facts. Whether Defendants, in fact, engaged in such conduct are issues of fact that the Court cannot resolve on a motion to dismiss.

### b.    Reasonable Reliance on the Defendant's Conduct or Representations

On the first *Johnson* non-exhaustive factor, reasonable reliance on the defendant's conduct or representations, the FAC alleges that Dimensions justifiably relied on MedImpact's representation and on March 6, 2019, it withdrew all its counterclaims in the arbitration.  (Dkt. No. 68, FAC ¶ 101.)  While Defendants point to language that Plaintiffs did not reasonably rely when Dimensions withdrew the counterclaim because at that time it was "█████████████" with MedImpact's use of Dimensions' protectable confidential information, (Dkt. No. 82 at 20), whether a plaintiff's reliance was reasonable "depends on a myriad of factual questions."  *Vu v. Prudential Prop. & Casualty Ins. Co.,* 26 Cal. 4th 1142, 1153 (2001) (equitable estoppel as a defense to statute of limitations).  Accordingly, taking the allegations in the FAC as true, the Court concludes Plaintiffs have sufficiently alleged reasonable reliance on Defendants' conduct.

### c.    Extent to Which the Purposes of the Limitations Period Have Been Satisfied

On the third *Johnson* non-exhaustive factor, the extent to which the purposes of the limitations period have been satisfied, Defendants argue that the purpose of enforcing the statute of limitations is to encourage plaintiffs to pursue claims diligently and protect defendants from defending stale claims.  (Dkt. No. 78-1 at 20-21.)  Plaintiffs respond that the purpose of the statute of limitations is to provide timely notice to Defendants of

1    Plaintiffs' claims which has been met because Defendants have been on notice of the
2    claims since the arbitration.  (Dkt. No. 82 at 22 n. 11.)

3         The purpose of a statute of limitation is "repose, elimination of stale claims, and
4    certainty about a plaintiff's opportunity for recovery and a defendant's potential
5    liabilities."  *Young v. United States*, 535 U.S. 43, 47 (2002) (quoting *Rotella v. Wood*,
6    528 U.S. 549, 555 (2000)).  Setting a deadline to file a complaint encourages diligence by
7    plaintiffs and protects defendants against "stale or unduly delayed claims."  *In re Neff*,
8    824 F.3d 1181, 1185 (9th Cir. 2016).  Yet, the purpose of equitable estoppel is to toll the
9    limitations period when a defendant engages in fraudulent conduct to prevent the plaintiff
10   from filing a timely suit.  *See Johnson*, 314 F.3d at 414.

11        Here, because Plaintiffs have sufficiently alleged equitable estoppel based on
12   Defendants' alleged conduct in preventing Plaintiffs from discovering the true facts on
13   the DTSA and CUTSA claims, whether the purposes of the statute of limitations have
14   been met is a disputed question of fact not appropriate on a motion to dismiss.

15        **3.    Pleading Facts with the Requisite Particularity**

16        Finally, Defendants argue that Plaintiffs have not plead any new and relevant facts
17   with the requisite particularity but instead simply allege that Mr. Brown denied
18   wrongdoing or MedImpact withheld discovery.  (Dkt. No. 78-1 at 21.)  Plaintiffs respond
19   that they have provided details as to the alleged affirmative statements and what was
20   concealed.  (Dkt. No. 82 at 21-22.)

21        "The plaintiff must demonstrate that he relied on the defendant's misconduct in
22   failing to file in a timely manner and "must plead with particularity the facts which give
23   rise to the claim of fraudulent concealment."  *Guerrero v. Gates*, 357 F.3d 911, 920 (9th
24   Cir. 2004) (plaintiff's equitable estoppel defense to statute of limitations was barred
25   where plaintiff "failed to plead with particularity any . . . fraudulent behavior").

26

27                                           20
28                                                            21-CV-2081-GPC-DEB

1    Plaintiffs have provided detailed allegations, with the requisite particularity, to

2  support equitable estoppel.  They allege specific dates, identified the author or speaker,

3  the content of the statements and why the statements were false.  (Dkt. No. 68, FAC ¶¶

4  99(a)-(k).)  Plaintiffs allege instances when Mr. Brown falsely denied that MedImpact

5  misappropriated Dimensions' trade secret and instances when Mr. Brown affirmatively

6  asserted that MedImpact did not misuse Dimensions' trade secrets.  (*Id.*)  They also claim

7  that Heather Bates, MedImpact's expert, affirmatively and falsely stated that MIL and

8  MedImpact do not perform drug-indication edits outside the JV.  (*Id.*)  MedImpact's

9  allegations are not mere denials of liability but include affirmative misrepresentations.

10  Accordingly, Defendants' argument that Plaintiffs have failed to allege the requisite

11  particularity concerning equitable estoppel is without merit and the court DENIES

12  Defendants' motion to dismiss on this ground.[12]

13    In conclusion, the Court DENIES Defendants' motion to dismiss the DTSA and

14  CUTSA based on the statute of limitations.  Because the Court concludes that Plaintiffs

15  have sufficiently alleged equitable estoppel to toll the statute of limitations, the Court

16  need not address equitable tolling under federal and state law. [13]

17  **D.    RICO**

18    Defendants argue that the RICO cause of action fails for lack of distinctness.  (Dkt.

19  No. 78-1 at 23-24.)  In response, Plaintiffs do not address the substantive law on

20  distinctness but argue that to the extent MedImpact pled the same enterprise and persons

---

[12] Defendants also challenge Plaintiffs' allegation that MedImpact or Mr. Brown lied in denying wrongdoing or that MedImpact withheld evidence.  (Dkt. No. 78-1 at 22.)  However, these are factual issues that the Court is unable to determine on a motion to dismiss.

[13] The Court also need not address Defendants' summary argument that the discovery rule, continuing violation and continuous accrual theories of tolling do not apply.  (Dkt. No. 78-1 at 23.)

1  in the Related Case, then either the RICO claims in both cases survive or both claims

2  must fail.[14]  (Dkt. No. 82 at 22.)

3       The FAC alleges that all Defendants, comprising of a parent company, two

4  subsidiaries, and an officer, qualify as "persons" and the same Defendants are members

5  of an associated-in-fact "enterprise" or the "MedImpact RICO Enterprise."  (Dkt. No. 68,

6  FAC ¶¶ 139, 140.)  It also summarily claims that each member of the MedImpact RICO

7  Enterprise is separate and distinct from the Enterprise.  (*Id.* ¶ 141.)

8       In order to establish RICO liability under § 1962(c), a plaintiff "must allege and

9  prove the existence of two distinct entities: (1) a 'person'; and (2) an 'enterprise' that is

10 not simply the same 'person' referred to by a different name." *Cedric Kushner*

11 *Promotions, Ltd. v. King*, 533 U.S. 158, 161 (2001).  The term "enterprise" is defined as

12 "any individual, partnership, corporation, association, or other legal entity, and any union

13 or group of individuals associated in fact although not a legal entity."  18 U.S.C. §

14 1961(4).  "A plaintiff cannot meet RICO's distinctness requirement by alleging that a

15 RICO enterprise is comprised of entities within a corporate family and that those

16 individual corporate entities are the RICO persons." *Geovector Corp. v. Samsung Elecs.*

17 *Co. Ltd.*, Case No. 16-cv-02463-WHO, 2016 WL 6662996, at *5 (N.D. Cal. Nov. 10,

18 2016); *Chagby v. Target Corp.*, 358 Fed. App'x 805, 808 (9th Cir. 2009) (theory that "an

19 enterprise existed between Target Corporation and its wholly-owned subsidiaries fails to

20 meet the distinctiveness requirement of civil RICO claims").

21      While "a plaintiff may name all members of an associated-in-fact enterprise as

22 individual RICO persons," the individual members must be "'separate and distinct' from

23 the enterprise they collectively form." *Moran v. Bromma*, 675 Fed. App'x 641, 645 (9th

24 —————————————

25 [14] In the Related Case, the RICO claim survived a motion to dismiss because IQVIA did not move to
26 dismiss the RICO claims based on lack distinctness but on other grounds.  (Case No. 19cv1865-
GPC(DEB), Dkt. No. 107.)
27                                            22

28                                                                21-CV-2081-GPC-DEB

1  Cir. 2017) (quoting *River City Mkts., Inc. v. Fleming Foods W., Inc*., 960 F.2d 1458,

2  1461-62 (9th Cir. 1992) ("a single individual or entity cannot be both the RICO

3  enterprise and an individual RICO defendant") and *Living Designs, Inc. v. E.I. Dupont de*

4  *Nemours and Co.,* 431 F.3d 353, 361 (9th Cir. 2005) (if the "enterprise" consisted only of

5  [corporate defendant] and its employees, the pleading would fail for lack of

6  distinctiveness.")).  Therefore, a plaintiff must allege that the individual members are

7  separate and distinct from the enterprise.  *See id.; Ice Cream Distrib. of Evansville, LLC*

8  *v. Dreyer's Grand Ice Cream, Inc*., No. 09–5815 CW, 2010 WL 3619884, at *5 (N.D.

9  Cal. Sept. 10, 2010) ("[A] § 1962(c) claim [cannot] be based on a RICO enterprise

10  comprised of a corporation, a wholly-owned subsidiary and an employee of that

11  corporate family if these entities were also plead as the RICO persons.").

12       Here, Plaintiffs have not alleged in the FAC or argued in opposition that each

13  member of the enterprise is separate and distinct from the enterprise.  Because Plaintiffs

14  have not alleged distinctness as required under RICO**,** the Court GRANTS Defendants'

15  motion to dismiss.  *See Chang v. Noh*, Case No. 2:17–cv–06205–RGK–JC, 2017 WL

16  7411155, at *4 (C.D. Cal. Nov. 27, 2017) (dismissing RICO claims for alleging that Noh,

17  Yoon, and Park are RICO persons and that together they formed an associated-in-fact

18  enterprise but fail to allege how the enterprise and the alleged RICO persons are distinct

19  from each other).

20       As such, the Court declines to address Defendants' additional arguments seeking

21  dismissal for failing to allege domestic injury and concrete injury.  *See id*. at *4 n. 1

22  ("Because the Court g[r]ants the Motion as to the RICO claim for failure to sufficiently

23  allege the enterprise element, the Court need not address Defendants' additional

24  arguments for dismissal, namely that Chang failed to plead the predicate acts with the

25  requisite degree of particularity, relatedness between the acts and continuity.").

26  / / /

27

28

23

**E.    Breach of Fiduciary Duty**

Defendants argue that (1) Cayman law applies to the fiduciary duty claim under the internal affairs doctrine; (2) the Court should decline supplemental jurisdiction over the cause of action because Plaintiffs failed to plead Dimensions' principal place of business in the FAC; and (3) under Cayman law, the breach of fiduciary duty claim fails to state a claim because Mr. Brown, as a board member and general manager of the Joint Venture, did not owe a fiduciary duty to IQVIA AG and IQVIA Inc. given that they were not members of the Joint Venture and did not owe a fiduciary duty to Dimensions since they have not alleged a "special relationship."[15]   (Dkt. No. 78-1 at 24-27.)   In response, Plaintiffs argue that Defendants have not established that Cayman Law applies due to several questions of fact not amenable on a motion to dismiss.   (Dkt. No. 82 at 25-27.) Irrespective of which law applies, they claim that as a fiduciary Mr. Brown owed a fiduciary duty to the JV, as the corporation and its shareholders, Dimensions, MI-HK and MIL.   (*Id.* at 27-28.)   They also argue that whether a special relationship existed between Mr. Brown and Dimensions is a question of fact not to be decided at this stage.   (*Id.*)

The FAC claims that Mr. Brown breached his fiduciary duty to the JV and Plaintiffs "by misusing Plaintiffs' confidential information in violation of confidentiality agreements; partnering with Dimensions under false pretenses; directly participating in making materially false and/or misleading statements to Plaintiffs about the purpose of the Joint Venture (concealing Defendants' fraudulent scheme from Plaintiffs); misusing Plaintiffs' confidential information; diverting opportunities away from the Joint Venture; and serving MedImpact's ulterior motives and engaging in self-dealing.   (Dkt. No. 68, FAC ¶ 164.)   All named Plaintiffs allege a breach of fiduciary duty claim against Mr.

---

[15] Defendants also argue that the breach of fiduciary duty claim is an impermissible derivative action under Cayman law, and if California law applies, the breach of fiduciary duty claim is time barred, and preempted.   (Dkt. No. 78-1 at 29-30.)

Brown, (Dkt. No. 68, FAC ¶¶ 161-166), yet the parties do not dispute that this cause of action applies solely to Mr. Brown's alleged fiduciary duty to Plaintiff Dimensions and not IQVIA Inc. or IQVIA AG.  (*See* Dkt. No. 78-1 at 29; Dkt. No. 82 at 27-28 (solely arguing that Mr. Brown owed a breach of fiduciary duty to Dimensions).)  Therefore, the Court considers only Dimensions' breach of fiduciary duty claim against Mr. Brown.

As a threshold matter, the parties dispute which law applies to the breach of fiduciary duty cause of action.  "A federal court sitting in diversity must look to the forum state's choice of law rules to determine the controlling substantive law."  *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 589 (9th Cir. 2012) (quoting *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1187 (9th Cir.), *opinion amended on denial of reh'g*, 273 F.3d 1266 (9th Cir. 2001)); *Downing v. Abercrombie & Fitch*, 265 F.3d 994, 1005 (9th Cir. 2001) ("In a diversity case, federal courts apply the substantive law of the forum in which the court is located, including the forum's choice of law rules.").

California has adopted and codified the "internal affairs doctrine," which requires a court to apply the law of the state of incorporation to those matters concerning the internal affairs of a corporation.  *State Farm Mut. Auto. Ins. Co. v. Superior Ct.*, 114 Cal. App. 4th 434, 442 (2003); *Vaughn v. LJ Int'l, Inc.*, 174 Cal. App. 4th 213, 223 (2009): Cal. Corp. Code § 2116 ("The directors of a foreign corporation transacting intrastate business are liable to the corporation, its shareholders, creditors, receiver, liquidator or trustee in bankruptcy for the making of unauthorized dividends, purchase of shares or distribution of assets or false certificates, reports or public notices or other violation of official duty according to any applicable laws of the state or place of incorporation or organization, whether committed or done in this state or elsewhere.").  "The internal affairs doctrine is a conflict of laws principle which recognizes that only one State should have the authority to regulate a corporation's internal affairs—matters peculiar to the relationships among or between the corporation and its current officers, directors, and

1    shareholders—because otherwise a corporation could be faced with conflicting

2    demands."[16]  *Lidow v. Superior Ct.*, 206 Cal. App. 4th 351, 358-59 (2012) (quoting

3    *Edgar v. MITE Corp.*, 457 U.S. 624, 645 (1982) (internal quotation marks omitted)).

4         California recognizes a limited exception to the internal affairs doctrine "where,

5    with respect to the particular issue, some other state has a more significant relationship . .

6    . to the parties and the transaction[.]"  *Id.* at 359 (quoting Restatement 2d Conflicts of

7    Laws, § 309).  In *Lidow*, after reviewing precedent on the application of this "exception",

8    the court of appeals commented "that courts are less apt to apply the internal affairs

9    doctrine when vital statewide interests are at stake, such as maintaining the integrity of

10   California security markets and protecting its citizens from harmful conduct. . . [and]

11   when less vital state interests are at stake (e.g., whether a foreign corporation

12   headquartered in another state pays promised dividends to its shareholders, or whether

13   the shareholder of a foreign corporation must fulfill certain procedural requirements set

14   before bringing a derivative suit), courts are more apt to apply the internal affairs

15   doctrine."  *Id.* at 362 (declining to apply internal affairs because wrongful termination in

16   violation of public policy concerns conduct beyond corporate governance and implicate

17   California's vital state interest in protecting its residents from harmful conduct such as

18   retaliation and wrongful termination).

19        The California Supreme Court has suggested and the Ninth Circuit has applied the

20   internal affairs doctrine, the state of the law of incorporation, to breach of fiduciary duty

21

22   _____

23   [16] Matters that typically fall under the internal affairs doctrine and "which involve primarily a

24   corporation's relationship to its shareholders include steps taken in the course of the original
     incorporation, the election or appointment of directors and officers, the ad/option of by-laws, the

25   issuance of corporate shares, preemptive rights, the holding of directors' and shareholders' meetings,
     methods of voting including any requirement for cumulative voting, shareholders' rights to examine

26   corporate records, charter and by-law amendments, mergers, consolidations and reorganizations and the
     reclassification of shares."  *Lidow*, 206 Cal. App. 4th at 359.

27                                               26

28                                                                          21-CV-2081-GPC-DEB

1   claims.  In *Nedlloyd*, even though the California Supreme Court found that the choice-of-

2   law provision applied to the plaintiff's breach of fiduciary duty claim, it also noted that it

3   would reach the same conclusion based on the internal affairs doctrine.  *Nedlloyd Lines*

4   *B.V. v. Superior Ct*., 3 Cal. 4th 459, 471 (1992) ("even in the absence of a choice-of-law

5   clause, Hong Kong's overriding interest in the internal affairs of corporations domiciled

6   there would in most cases require application of its law.").  The Ninth Circuit has stated,

7   "[c]laims involving 'internal affairs' of corporations, such as the breach of fiduciary

8   duties, are subject to the laws of the state of incorporation."  *Davis & Cox v. Summa*

9   *Corp*., 751 F.2d 1507, 1527 (9th Cir. 1985) *superseded on other grounds as stated in*

10  *Mattel, Inc. v. MGA Entm't, Inc.,* 705 F.3d 1108, 1110 (9th Cir. 2013); *see also In re*

11  *Verisign, Inc., Derivative Litig*., 531 F. Supp. 2d 1173, 1215 (N.D. Cal. 2007) (claims

12  related to internal affairs of a corporation include "claims for breach of fiduciary duty,

13  accounting, unjust enrichment, rescission, constructive fraud, corporate waste, breach of

14  contract, gross mismanagement, and restitution"); *Voss v. Sutardja*, No. 14-01581-LHK,

15  2015 WL 349444, at *9 (N.D. Cal. Jan. 26, 2015) (in a case concerning breach of

16  fiduciary duty claim and others, applying Bermuda law and rejecting the plaintiff's

17  argument that an exception to internal affairs doctrine should apply simply because of the

18  company's extensive contacts with California); *Booth v. Strategic Realty Trust, Inc.*, No.

19  13-04921-JST, 2014 WL 3749759, at *8 (N.D. Cal. July 29, 2014) (applying Maryland

20  law to a breach of fiduciary duty claim based on the internal affairs doctrine); *Vaughn,*

21  174 Cal. App. 4th at 223-25 n. 5 (applying internal affairs doctrine to breach of fiduciary

22  duty).

23        While California case law and Ninth Circuit precedent support the application of

24  the internal affairs doctrine to a claim for breach of a fiduciary duty, if a claim implicates

25  a broader public interest that California has a vital interest in protecting, then the doctrine

26  does not apply.  *See Kaul v. Mentor Graphics Corp*., No. 16-CV-02496-BLF, 2016 WL

27

28

6249024, at *9 (N.D. Cal. Oct. 26, 2016), *aff'd*, 730 Fed. App'x 437 (9th Cir. 2018) (holding that the law of the state where a company is incorporated should apply to breach of fiduciary duties unless there was no choice-of-law clause in the agreement and it is an unusual case where a different state has a more significant relationship to the parties and corporation).

Here, Defendants argue that Cayman law applies based on California conflict of law principles adopting the internal affairs doctrine.  (Dkt. No. 78-1 at 26-27.)  In response, without arguing in favor or against Cayman law, Plaintiffs maintain that three issues need to be determined before the application of Cayman law and these issues have not been addressed by Defendants and involve a factual inquiry.  (Dkt. No. 82 at 25-27.) Specifically, Plaintiffs argue that there is an issue of whether the internal affairs doctrine applies to exempted companies incorporated and existing under the Cayman Island laws, whether the dispute is the type of internal organizational issue that is covered by the internal affairs doctrine and whether the exception applies where one state has a "more significant relationship" to the parties and the transaction.  (*Id.* at 25-26.)  In reply, Defendants do not address the three issues raised in Plaintiffs' opposition, and instead, suggest that because Plaintiffs have argued for the application of California law, and "conceded its claim, the Court need not address Cayman law."[17]  (Dkt. No. 85 at 14.)

The parties' positions on the application of Cayman law are not clear and a full analysis of California's conflict of law principles have not been conducted by the parties. The Court declines to conduct an analysis without the parties' positions and without full

---

[17] Defendants have not provided legal authority that a party can concede or waive conflict of law principles.

1  legal analysis on the issue.  Therefore, the Court DENIES Defendants' motion to dismiss

2  the breach of fiduciary duty claim.[18]

3  **1.      Rule 12(b)(1) - Subject Matter Jurisdiction**

4  Defendants also move to dismiss the breach of fiduciary duty claim under Rule

5  12(b)(1) for Plaintiffs' failure to plead diversity jurisdiction by omitting Dimensions'

6  principal place of business, and therefore the Court should decline supplemental

7  jurisdiction over the state law claim.  (Dkt. No. 78-1 at 27.)  Plaintiffs respond that the

8  Court has diversity jurisdiction over the case and it may consider documents outside the

9  complaint to support subject matter jurisdiction.  (Dkt. No. 82 at 29-30.)  Defendants did

10  not reply.

11  Under Rule 12(b)(1), a party may move to dismiss for lack of subject matter

12  jurisdiction.  Fed. R. Civ. P. 12(b)(1).  A Rule 12(b)(1) jurisdictional challenge may be

13  facial or factual.  *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).

14  "In a facial attack, the challenger asserts that the allegations contained in a complaint are

15  insufficient on their face to invoke federal jurisdiction."  *Id.*  When evaluating a facial

16  attack, the court assumes the truth of the complaint's allegations and draws all reasonable

17  inferences in plaintiff's favor.  *See Wolfe v. Strankman*, 392 F.3d 358, 362 (9th Cir.

18  2004).  Where the attack is factual, however, "the court need not presume the truthfulness

19  of the plaintiff's allegations."  *Safe Air for Everyone*, 373 F.3d at 1039.  In resolving a

20  factual dispute as to the existence of subject matter jurisdiction, a court may review

21  extrinsic evidence beyond the complaint without converting a motion to dismiss into one

22  for summary judgment. *Id.; McCarthy v. United States*, 850 F.2d 558, 560 (9th Cir. 1988)

---

25  [18] Because the threshold issue of which law applies to the breach of fiduciary duty claim has not been
26  resolved, the Court declines to address Defendants' additional arguments that the breach of fiduciary
27  duty claim is an impermissible derivative action under Cayman law and if California law applies, the
fiduciary duty claim is time barred and preempted.

28

1    "Given their limited jurisdiction, federal courts have repeatedly held that a

2    complaint must include allegations of both the state of incorporation and the principal

3    place of business of corporate parties." *Harris v. Rand*, 682 F.3d 846, 850 (9th Cir.

4    2012).  For diversity purposes, a corporation's principal place of business is "the place

5    where [the] corporation's high level officers direct, control, and coordinate the

6    corporation's activities" or the "nerve center." *Hertz Corp. v. Friend*, 559 U.S. 77, 92-93

7    (2010).  Typically, the principal place of business is where the corporation maintains its

8    headquarters. *Id.* at 93.

9         Defendants make a facial challenge to subject matter jurisdiction arguing Plaintiffs

10   failed to allege Dimensions' principal place of business.  In response, Plaintiffs present

11   the declaration of Dimensions' in-house counsel stating that Dimensions' principal place

12   of business, since 2009, has been in the UAE.  (Dkt. No. 82-1, Shanti Decl. ¶ 3.)

13   However, because Defendants present a facial challenge, the Court may not consider the

14   declaration of Shanti.  Notwithstanding the declaration, the Court may consider

15   documents incorporated by reference in the FAC without converting the motion into one

16   for summary judgment.  In opposition, Plaintiffs also ask the Court to consider the JV

17   agreement which was filed in the Related Case under the incorporation by reference

18   doctrine.  (Dkt. No. 82 at 29 & n. 18.)

19        The Court may consider documents outside the complaint under the incorporation

20   by reference doctrine.  *See Ritchie*, 342 F.3d at 908   Here, because the FAC discusses

21   and references the Related Case, the Court takes judicial notice of documents filed in that

22   case.  *See Reyn's Pasta Bella, LLC v. Visa USA, Inc*., 442 F.3d 741, 746 n.6 (9th Cir.

23   2006) (taking judicial notice of briefs, transcripts, and various other court filings from a

24   related case).

25        While the JV agreement does not provide an assertion that Dimensions' principal

26   place of business is in the UAE, it states Dimensions is a limited liability company

27

28

21-CV-2081-GPC-DEB

1    established under the UAE laws with a registered address in the UAE.  (Case No.

2    19cv1865-GPC(DEB), Dkt. No. 452-35, Swedlow Decl., Ex. 41 at 4, 27 (UNDER

3    SEAL).)  Moreover, in the Related Case, MedImpact alleged that Dr. Omar Ghosheh, a

4    co-founder of Dimensions until his retirement, is a resident of Dubai, UAE.  (Dkt. No.

5    93, FAC ¶ 22.)  Dr. Ghosheh was also the General Manager/CEO of Dimensions.  (Dkt.

6    No. 198-2, Shanti Decl. ¶¶ 22, 24.)  Further, Dimensions is a UAE company with three

7    offices in the UAE and provides services to customers in the Middle East.  (Dkt. No. 59-

8    5, Dr. Ghosheh Decl. ¶ 2.)

9           Here, while the FAC alleges that Dimensions is incorporated in the UAE, it does

10   not allege its principal place of business.  (Dkt. No. 68, FAC ¶ 15.)  However, the

11   documents considered under the incorporation by reference doctrine provide support that

12   Dimensions' principal place of business or its nerve center where its officers or directors

13   conduct the corporation's activities is in the UAE and sufficient to survive a motion to

14   dismiss.  Therefore, the Court DENIES Defendants' motion to dismiss for lack of subject

15   matter jurisdiction.

16   **F.    Conspiracy**

17          Defendants argue that the conspiracy claim is preempted by CUTSA and because

18   conspiracy is not a stand-alone cause of action, the claim must be dismissed.  (Dkt. No.

19   78-1 at 31.)  Plaintiffs disagree maintaining that because they have adequately pled their

20   other cause of action, this claim should survive.  (Dkt. No. 82 at 31.)

21          "The elements of an action for civil conspiracy are the formation and operation of

22   the conspiracy and damage resulting to plaintiff from an act or acts done in furtherance of

23   the common design. . . . In such an action the major significance of the conspiracy lies in

24   the fact that it renders each participant in the wrongful act responsible as a joint tortfeasor

25   for all damages ensuing from the wrong, irrespective of whether or not he was a direct

26

27

28

31

actor and regardless of the degree of his activity." *Applied Equip. Corp. v. Litton Saudia Arabia Ltd*., 7 Cal. 4th 503, 511 (Cal. 1994) (citation and quotation marks omitted). "Conspiracy is not a cause of action, but a legal doctrine that imposes liability on persons who, although not actually committing a tort themselves, share with the immediate tortfeasors a common plan or design in its perpetration." *Id.* at 510-11.   A conspiracy must be activated by the commission of an actual tort.  *Id.* at 511.

In support of the preemption argument, Defendants merely cite to the Court's preemption analysis in the Related Case without conducting their own independent analysis.  However, the Related Case involves different underlying facts than in this case.  Thus, the Court DENIES Defendants' motion to dismiss the conspiracy cause of action as not factually or legally supported.

**G      Shareholder Standing Rule**

Defendants argue that the shareholder standing rule bars any claims by IQVIA AG, as a parent of Dimensions, and IQVIA Inc., as a parent of IQVIA AG, for failing to allege their own independent injuries because they license the alleged trade secrets to customers and act through Dimensions.  (Dkt. No. 78-1 at 31-32.)  Plaintiffs respond that IQVIA AG and IQVIA Inc.'s claims are not barred by the shareholder standing rule because they are possessors of the trade secrets and have alleged their own independent harm.  (Dkt. No. 82 at 30-31.)  In reply, Defendants do not address whether IQVIA AG and IQVIA Inc's status as possessors support their separate independent harm distinct from Dimensions and merely reiterate that the FAC alleges that IQVIA AG and IQVIA Inc. license the alleged trade secrets to customers through Dimensions.  (Dkt. No. 85 at 15.)

There are two standing doctrines: Article III or "constitutional standing", *see Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992), raised on a Rule 12(b)(1) motion, and "prudential standing" raised on the Rule 12(b)(6) motion, *see Lexmark Int'l, Inc. v. Static*

1    *Control Components, Inc*., 572 U.S. 118, 126 (2014).  Because Defendants move to

2    dismiss under Rule 12(b)(6) and shareholder standing is a prudential limitation on a

3    federal court jurisdiction, they are asserting Plaintiffs lack prudential standing.

4    "Prudential standing" is a doctrine that is not derived from Article III and is "'not

5    exhaustively defined' but encompass[es] . . . at least three broad principles: "the general

6    prohibition on a litigant's raising another person's legal rights, the rule barring

7    adjudication of generalized grievances more appropriately addressed in the representative

8    branches, and the requirement that a plaintiff's complaint fall within the zone of interests

9    protected by the law invoked." *Lexmark Int'l, Inc. v. Static Control Components, Inc*.,

10   572 U.S. 118, 126 (2014) (citation and internal quotation marks omitted).

11           The shareholder standing rule is a prudential limitation on the exercise of federal

12   court jurisdiction holding that "[g]enerally, a shareholder must assert more than personal

13   economic injury resulting from a wrong to the corporation.  A shareholder must be

14   injured directly and independently of the corporation." *Shell Petroleum, N.V. v. Graves*,

15   709 F.2d 593, 595 (9th Cir. 1983) (internal citations omitted); *Vigilante.com, Inc. v.*

16   *Argus Test.com, Inc*., No. 04–cv–00413–MO, 2005 WL 2218405, at *8 (D. Or. Sept. 6,

17   2005) (citation omitted) ("To avoid the limitations imposed by the shareholder standing

18   rule, "[a] shareholder must be injured directly and independently of the corporation.").

19           Here, the FAC alleges that IQVIA AG is the controlling beneficial owner of

20   Dimensions, and acquired, among other things, its intellectual property, and it is wholly-

21   owned by IQVIA Inc.  (Dkt. No. 68, FAC ¶¶ 1, 14.)  The FAC further claims that

22   Plaintiffs, acting through Dimensions, license their alleged trade secrets to customers.

23   (*Id.* ¶ 74.)  The FAC also maintains that Plaintiffs own and possess the trade secrets at

24   issue through the acquisition of Dimensions.  (*Id.* ¶ 118.)  The damages or harm alleged

25   are lost sales of indication and contraindication edits, price erosion, lost license royalties,

26

27                                                          33

28

loss of return on investment and Defendants' avoided costs.  (*Id.* ¶¶ 54-55, 63-64, 67-69, 74, 79.)

On the DTSA and CUTSA claims, IQVIA AG and IQVIA Inc. have sufficiently alleged independent, separate harm based on their status as possessors[19] of the trade secrets and because the issue of whether IQVIA AG and IQVIA Inc. are possessors is intertwined with the merits of the claims, dismissal is not appropriate at the motion to dismiss stage.  *See Boston Scientific Corp. v. BioCardia, Inc.,* 524 F. Supp. 3d 914, 918 (9th Cir. 2021) (dismissal improper under Rule 12(b)(6) prudential standing analysis because whether the plaintiff owned the trade secret required a resolution of facts that go to the merits of the plaintiff's claims).

As to conspiracy, the only other remaining cause of action by IQVIA AG and IQVIA Inc., Defendants argue that because conspiracy is not a standalone cause of action but relies on an underlying tort, then the shareholder standing rule also applies to this claim, or in other words, because the shareholder standing rule bars the DTSA and CUTSA causes of action, then the conspiracy claim also fails.  (Dkt. No. 78-1 at 33.)

Because the Court denies dismissal of the DTSA and CUTSA claims based on the shareholder standing rule, the conspiracy claim also necessarily survives.  Thus, the Court DENIES Defendants' motion to dismiss based on the shareholder standing rule.

## H.    Claim Preclusion

Defendants maintain that MIL and MI-HK should be dismissed as defendants under the doctrine of claim preclusion because there is an identity of claims between the counterclaims raised in the arbitration and the claims in this case as both cases concerned

---

[19] The elements of a misappropriation claim under the DTSA requires the plaintiff to prove "(1) that the plaintiff possessed a trade secret, (2) that the defendant misappropriated the trade secret; and (3) that the misappropriation caused or threatened damage to the plaintiff." *InteliClear, LLC v. ETC Global Holdings, Inc.,* 978 F.3d 653, 657-58 (9th Cir. 2020) (citing 18 U.S.C. § 1839(5)).

Dimensions' drug-to-diagnosis indication and contraindication edits.  (Dkt. No. 78-1 at 33-34.)  Plaintiffs oppose contending that there is not an identity of claims because the conduct in this case concerns post-arbitration conduct of continuing misappropriation and acts to cover up the misappropriation which is conduct distinct from those alleged in the arbitration.  (Dkt. No. 82 at 24-25.)  Defendants did not reply on this issue.  (*See* Dkt. No. 85.)

Under claim preclusion, a final judgment bars "successive litigation of the very same claim, whether or not relitigation of the claim raises the same issues as the earlier suit." *Taylor v. Sturgell*, 553 U.S. 880, 892 (2008) (quoting *New Hampshire v. Maine*, 532 U.S. 742, 748 (2001)).  "[C]laim preclusion prevents parties from raising issues that could have been raised and decided in a prior action—even if they were not actually litigated.  If a later suit advances the same claim as an earlier suit between the same parties, the earlier suit's judgment 'prevents litigation of all grounds for, or defenses to, recovery that were previously available to the parties, regardless of whether they were asserted or determined in the prior proceeding.'" *Lucky Brand Dungarees, Inc. v. Marcel Fashions Grp., Inc.*, 140 S. Ct. 1589, 1595-96 (2020) (quoting *Brown v. Felsen*, 442 U.S. 127, 131 (1979)).  The elements of claim preclusion are "(1) an identity of claims, (2) a final judgment on the merits, and (3) privity between parties." *V.V.V. & Sons Edible Oils Ltd. v. Meenakshi Overseas, LLC,* 946 F.3d 542, 545 (9th Cir. 2019) (quoting *Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Planning Agency*, 322 F.3d 1064, 1077 (9th Cir. 2003) (internal quotation marks omitted)).

In assessing whether there is an "identity of claims", the Ninth Circuit directs courts to look at four factors which are not to be applied mechanistically:

(1) whether the two suits arise out of the same transactional nucleus of facts; (2) whether rights or interests established in the prior judgment would be destroyed or impaired by prosecution of the second action; (3) whether the two suits involve infringement of the same right; and (4) whether substantially the same evidence is presented in the two actions.

35

1   *Mpoyo v. Litton Electro-Optical Sys.*, 430 F.3d 985, 987 (9th Cir. 2005) (citation

2   omitted).  While all four factors are considered, "[r]eliance on the transactional nucleus

3   element is especially appropriate because the element is 'outcome determinative.'"

4   *ProShipLine Inc. v. Aspen Infrastructures LTD*, 609 F.3d 960, 968 (9th Cir. 2010)

5   (quoting *Mpoyo,* 430 F.3d at 988).  "Whether two events are part of the same transaction

6   or series depends on whether they are related to the same set of facts and whether they

7   could conveniently be tried together."  *Media Rights Techs., Inc. v. Microsoft Corp*. 922

8   F.3d 1014, 1027 (9th Cir. 2019) (quoting *Western Sys., Inc. v. Ulloa*, 958 F.2d 864, 871

9   (9th Cir. 1992) and citing Restatement (Second) of Judgments § 24 (1982)).  "If the

10  harm[s] arose at the same time, then there was no reason why the plaintiff could not have

11  brought [both] claim[s] in the first action.  The plaintiff simply could have added a claim

12  to the complaint." *Id.* (quoting *Howard*, 871 F.3d at 1039).  In contrast, "'[i]f the harm[s]

13  arose from different facts,' then a party is not obligated to bring both claims on pain [sic]

14  of preclusion." *Id.*  As the United States Supreme Court recently confirmed "[s]uits

15  involve the same claim (or cause of action) when they aris[e] from the same transaction,

16  or involve a 'common nucleus of operative facts.'" *Lucky Brand Dungarees, Inc.*, 140 S.

17  Ct. at 1595.  Where two claims are grounded in different conduct, different subject and

18  different times, they do not share a "common nucleus of operative facts." *Id.*

19         Here, the two suits do not arise out of the same transactional nucleus of facts.  Part

20  of this case involves continuing misappropriation that occurred after the conclusion of the

21  arbitration.   (Dkt. No. 68, FAC ¶¶ 49, 68, 69, 112.)  Therefore, Defendants have not

22  shown that there is an identity of claims between the allegations in the counterclaim with

23  the causes of action in this case.  Accordingly, the Court DENIES Defendants' motion to

24  dismiss MIL and MI-HK as defendants.

25  / / /

26  / / /

27

28

1

**Conclusion**

2        Based on the reasoning above, the Court GRANTS in part and DENIES in part

3  Defendants' motion to dismiss.  Specifically, the Court GRANTS Defendants' motion to

4  dismiss the RICO cause of action and DENIES the remaining causes of action.

5        IT IS SO ORDERED.

6  Dated:   October 7, 2022

7                                              Hon. Gonzalo P. Curiel

8                                              United States District Judge

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27                                         37

28