1
2
3
4
5
6
7
8     UNITED STATES DISTRICT COURT
9     SOUTHERN DISTRICT OF CALIFORNIA
10
11    IQVIA, INC., a Delaware corporation;          Case No.:  21-CV-2081-GPC-DEB
      and IQVIA AG, a Swiss company; and
12    DIMENSIONS HEALTHCARE LLC, a                  **ORDER DENYING DEFENDANTS'**
      United Arab Emirates limited liability        **MOTION TO STAY AND**
13    company,                                       **GRANTING PLAINTIFFS' EX**
                                                      **PARTE MOTION TO FILE A SUR-**
14                                                    **REPLY**
                                    Plaintiffs,
15
      v.                                             **[DKT. NOS. 97, 111.]**
16
      MEDIMPACT HEALTHCARE
17    SYSTEMS, INC., a California
      corporation; MEDIMPACT
18    INTERNATIONAL LLC, a California
      limited liability company;
19    MEDIMPACT INTERNATIONAL
      HONG KONG, LTD., a Hong Kong
20    corporation; and DALE BROWN, an
      individual,
21
22
                                    Defendants.
23
24
25         Before the Court is Defendants' motion to stay filed on October 21, 2022.  (Dkt.
26    No. 97.)  On November 10, 2022, Plaintiffs filed an opposition and Defendants replied on
27
                                              1
28

November 18, 2022.  (Dkt. Nos. 102, 109.)  On November 28, 2022, Plaintiffs filed a motion for leave to file a sur-reply which Defendants opposed.  (Dkt. Nos. 111, 115.) Based on the reasoning below, the Court GRANTS Plaintiffs' ex parte motion for leave to file a sur-reply and DENIES Defendants' motion to stay.

### Background

On May 6, 2022, Plaintiffs IQVIA Inc., IQVIA AG and Dimensions Healthcare LLC (collectively "Plaintiffs" or "IQVIA") filed the operative first amended complaint[1] ("FAC") against Defendants MedImpact Healthcare Systems, Inc. ("MHSI"), MedImpact International LLC ("MIL") and MedImpact International Hong Kong Ltd. ("MI-HK") and Dale Brown (collectively "Defendants" or "MedImpact") for 1) misappropriation of trade secrets under the Defend Trade Secrets Act ("DTSA"); 2) misappropriation of trade secrets under the California Uniform Trade Secrets Act ("CUTSA"); 3) violations of Racketeer Influenced and Corrupt Organizations Act ("RICO"); 4) breach of fiduciary duty; and 5) civil conspiracy.  (Dkt. No. 68, FAC.)  On Defendants' motion to dismiss, the Court granted dismissal of the RICO claim but denied dismissal of the remaining causes of action on October 7, 2022.  (Dkt. No. 93.)

The FAC alleges, that since 2011, MedImpact schemed to steal confidential and proprietary trade secrets from Dimensions through a Joint Venture ("JV") between MIL and Dimensions.  (Dkt. No. 68, FAC ¶ 1 & n.1.)  IQVIA alleges that MedImpact stole its confidential and proprietary drug-to-diagnosis indication and contraindication edits,[2]

---

[1] On April 15, 2022, the Court granted Defendants' motion to dismiss the complaint with leave to amend.  (Dkt. No. 59.)  The original complaint was filed on December 13, 2021.  (Dkt. No. 1, Compl.)

[2] "Drug-to-diagnosis <u>indication</u> edits provide a rejection alert when a patient requests to fill a prescription for a medication that is not used to treat that patient's medical diagnosis. For example, an indication edit would reject the incorrect prescription of an antibiotic—used to treat bacterial infections—for a viral infection, such as influenza.  Relatedly, drug-to-diagnosis <u>contraindication</u> edits provide a rejection alert when a patient requests to fill a prescription for a medication that may result in an adverse drug event if the medication is taken by a patient with certain medical conditions."  (Dkt. No.

2

incorporated them into MedImpact's products and unlawfully offered these edits for sale causing harm to IQVIA.  (*Id.* ¶¶ 3, 8.)

This case arises out of litigation in a related case, *MedImpact Healthcare Systems, Inc. et al. v. IQVIA Holdings Inc. et al.* in Case No. 19cv1865-GPC(DEB) ("*MedImpact I*").  In that case, MedImpact alleges that IQVIA, through its acquisition of Dimensions and through the JV, misappropriated MedImpact's trade secrets of its PBM[3] platform. (Case No. 19cv1865-GPC(DEB), Dkt. No. 93, FAC.)  In the amended answer, IQVIA asserts the affirmative defense of unclean hands based on MedImpact's scheme to steal IQVIA's drug-to-diagnosis indication and contraindication edits trade secrets.  (*Id.*, Dkt. No. 134, Am. Ans. at 27;[4] Dkt. No. 357, Swedlow Decl., Ex. 2, IQVIA's second supplemental response to Pls' Interrogatory No. 8 at 26-30 (UNDER SEAL).)  In September 2021, IQVIA sought leave to file a counterclaim to allege that MedImpact misappropriated IQVIA's drug-to-diagnosis indication and contraindication edits but the motion was denied on November 16, 2021.  (*Id.,* Dkt. Nos. 305, 360.)  Shortly thereafter, on December 13, 2021, IQVIA filed the instant complaint alleging the same claims as in the proposed counterclaims.  (Dkt. No. 1, Compl.)  It is not disputed that the allegations underlying the unclean hands defense in *MedImpact I* and the FAC in this case are the same.

On February 25, 2022, MedImpact sought summary judgment on the unclean hands defense in *MedImpact I,* but it was denied by the Court on May 17, 2022.  (Case No. 19cv1865-GPC(DEB), Dkt. Nos. 405, 557.)  The Court held that IQVIA had not waived the unclean hands affirmative defense and MedImpact's alleged inequitable

---

68, FAC ¶ 3.)  These edits save lives and minimize errors, fraud, waste, and/or abuse of medications and drive savings.  (*Id.* ¶¶ 23-25.)

[3] Pharmaceutical Benefits Management Platform

[4] Page numbers are based on the CM/ECF pagination.

21-CV-2081-GPC-DEB

conduct is related to the subject matter of its affirmative claims to support an unclean hands affirmative defense.  (*Id.*, Dkt. No. 557 at 4-9.)  After a number of dispositive motions, the remaining claims in *MedImpact I* are misappropriation of trade secrets under the DTSA and CUTSA against IQVIA AG and Omar Ghosheh ("Dr. Ghosheh") and breach of fiduciary duty and conspiracy against Dr. Ghosheh.  (*See* Dkt. No. 625.) *MedImpact I* is set for trial on February 21, 2023 in about two months.  (*See* Dkt. No. 661.)

In the instant motion, MedImpact moves to stay this case under *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936) pending resolution of IQVIA's unclean hands affirmative defense in *MedImpact I* arguing that because the unclean hands affirmative defense is based on the same core facts as the claims in this case, a stay will simplify issues in this case.  (Dkt. No. 97-1.)  IQVIA opposes.  (Dkt. No. 102.)

**Discussion**

**A.    IQVIA's Ex Parte Motion to file a Sur-Reply**

On November 28, 2022, IQVIA filed an ex parte motion for leave to file a sur-reply in order to "correct a material inaccuracy in Defendants' Reply brief . . ." concerning its "inspection" of MedBlocX.[5]  (Dkt, No. 111 at 2.)  MedImpact opposes arguing it did not raise any new arguments or facts in the reply but only responded to IQVIA's false statement that it was denied inspection of MedBlocX.  (Dkt. No. 115.)

Because neither the Federal Rules of Civil Procedure nor this District's Local Rules provide litigants a right to file a sur-reply, which leaves the question of whether to "permit[ ] the filing of a sur-reply is within the discretion of the district court." *Whitewater W. Indus., Ltd. v. Pac. Surf Designs, Inc.*, No. 17CV001118 BENBLM, 2018 WL 3198800, at *1 (S.D. Cal. June 26, 2019).  Allowing the filing of a sur-reply is within

---

[5] MedBlocX is MedImpact's product that allegedly incorporates IQVIA's trade secrets

the discretion of the district court, "but only where a valid reason for such additional briefing exists." *Nat'l Cas. Co. v. Nat'l Strength and Conditioning Ass'n,* Case No.: 18-CV-1292 JLS (KSC), 2020 WL 2991508, at *1 (S.D. Cal. June 4, 2020) (quoting *Whitewater W. Indus.,* 2018 WL 3198800, at *1).

Here, the Court agrees with MedImpact that the reply does not raise any new facts or arguments but addresses an incorrect statement that IQVIA was denied inspection of MedblocX during discovery in *MedImpact I* when, in fact, it had not.  However, because clarification is a valid reason for the sur-reply, the Court GRANTS IQVIA's request.  *See Radware, Ltd. v. F5 Networks., Inc*., Case No. 5:13-cv-02024-RMW, 2016 WL 393227, at *2 (N.D. Cal. Feb. 2, 2016).

**B.    Legal Standard on *Landis* Stay**

A federal district court possesses the inherent power to "control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.,* 299 U.S. 248, 254 (1936).  "A trial court may, with propriety, find it is efficient for its own docket and the fairest course for the parties to enter a stay of an action before it, pending resolution of independent proceedings which bear upon the case.  This rule applies whether the separate proceedings are judicial, administrative, or arbitral in character, and does not require that the issues in such proceedings are necessarily controlling of the action before the court." *Leyva v. Certified Grocers of California, Ltd.,* 593 F.2d 857, 863 (9th Cir. 1979) (citations omitted).

Deciding whether to grant a stay "calls for the exercise of judgment, which must weigh competing interests and maintain an even balance." *Landis,* 299 U.S. at 254-55.  The Ninth Circuit considers three factors on whether a stay should be granted: "[1] the possible damage which may result from the granting of a stay, [2] the hardship or inequity which a party may suffer in being required to go forward, and [3] the orderly course of justice measured in terms of the simplifying or complicating of issues, proof,

and questions of law which could be expected to result from a stay." *Lockyer v. Mirant*, 398 F.3d 1098, 1110 (9th Cir. 2005) (quoting *CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962)).  "[I]f there is even a fair possibility that the stay for which [the requesting party] prays will work damage to [someone] else," then the party seeking a stay "must make out a clear case of hardship or inequity in being required to go forward." *Landis*, 299 U.S. at 255.

"In the typical *Landis* stay case, a federal court postpones resolution of the case pending some related proceeding.  However, the related proceeding typically serves only to narrow the factual or legal issues for the federal court. . . . [A] *Landis* stay is generally of a limited duration." *Stoltz v. Fry Foods, Inc.*, 60 F. Supp. 3d 1132, 1136-37 (D. Idaho 2014) *see also Landis*, 299 U.S. at 250-51 (recognizing that the related case "may not settle every question of fact and law" in the stayed federal action).  A district court has discretion whether to grant or deny a *Landis* stay.  *See Dependable Highway Express, Inc. v. Navigators Ins. Co.*, 498 F.3d 1059, 1066 (9th Cir. 2007).  "The proponent of a stay bears the burden of establishing its need." *Landis*, 299 U.S. at 255; *Clinton v. Jones*, 520 U.S. 681, 708 (1997).

### 1.    Orderly Course of Justice

In considering the orderly course of justice, the Court considers whether a stay will simplify or complicate issues, proof, and questions of law.  *See Lockyer*, 398 F.3d at 1110.

MedImpact argues that because the unclean hands affirmative defense in *MedImpact I*, and the misappropriation of trade secret claims in this case implicate the same core issue of whether MedImpact incorporated IQVIA's drug-to-diagnosis indication and contraindication edits into its PBM platform and offered it for sale, staying this action will promote efficiency and the orderly course and administration of justice. MedImpact explains there is a "strong prosect" that that issue preclusion will apply to any

rulings on the unclean hands defense in *MedImpact I*, and will simplify and streamline the issues in this case.  (Dkt. No. 97-1 at 12-17.)

IQVIA responds that because it did not have a full and fair opportunity to litigate the unclean hands defense in *MedImpact I*, issue preclusion cannot apply.  Further, they contend that in the event the jury finds no liability, the Court would not even rule on the unclean hands affirmative defense.  Finally, if the jury finds liability and the Court determines the equitable affirmative defense of unclean hands, and applies issue preclusion, then IQVIA would be deprived of their right to jury trial on their trade secret misappropriation claims.  (Dkt. No. 102 at 11-15.)  MedImpact replies that IQVIA had a full and fair opportunity in *MedImpact I* to litigate the unclean hands defense, the fact that the Court might not even rule on the affirmative defense does not preclude a stay as long as there is a "strong prospect" that it could apply, and the deprivation of a "right to jury trial does not negate the issue-preclusive effect of a judgment, even if that judgment was entered by a juryless tribunal."  (Dkt. No. 109 at 8-10 (quoting *B&B Hardware, Inc. v. Hargis Indus., Inc.*, 575 U.S. 138, 150 (2015).)

As both parties well know, issue preclusion bars "successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment, even if the issue recurs in the context of a different claim."  *Taylor v. Sturgell*, 553 U.S. 880, 892 (2008) (quoting *New Hampshire v. Maine*, 532 U.S. 742, 748-49 (2001) (internal quotation marks omitted).  On whether an issue of fact or law was "actually litigated", the Ninth Circuit articulated four conditions that must be met: "'(1) the issue at stake was identical in both proceedings; (2) the issue was actually litigated and decided in the prior proceedings; (3) there was a full and fair opportunity to litigate the issue; and (4) the issue was necessary to decide the merits.'" *Janjua v. Neufeld*, 933 F.3d 1061, 1065 (9th Cir. 2019) (quoting *Oyeniran v. Holder*, 672 F.3d 800, 806 (9th Cir. 2012), *as amended* (May 3, 2012)).

IQVIA challenges the third condition arguing that issue preclusion cannot apply to any ruling in *MedImpact I* because it did not have a full and fair opportunity to litigate the unclean hands affirmative defense due to obstruction of discovery by MedImpact and its spoliation of tens of thousands of emails it was required to preserve.  (Dkt. No. 102 at 11-13.)

Issue preclusion cannot apply if there was not a full and fair opportunity to litigate in the prior proceeding.  *Kremer v. Chemical Constr. Corp*., 456 U.S. 461, 480-81 & n. 22 (1982) ("Redetermination of issues is warranted if there is reason to doubt the quality, extensiveness, or fairness of procedures followed in prior litigation.").  A party has had a full and fair opportunity to litigate if the procedures provided meet the requirements of the Due Process Clause of the Fourteenth Amendment.  *Id.* at 482-83 & n. 24.  While there is not a single model of procedural fairness mandated by the Due Process Clause, *see Mitchell v. W.T. Grant Co*., 416 U.S. 600, 610 (1974), "whether the party against whom the prior judgment is asserted was represented by counsel, had a right to appeal, was held to a different burden of proof, or whether the opposing party fraudulently concealed facts are all factors which bear on the inquiry into a full and fair opportunity to litigate."  *Pragovich v. IRS*, No. MC 08–0041–PHX–MHM (MEA), 2008 WL 5082267, at *2 (D. Ariz. Nov. 26, 2008) (Murguia, J) (citations omitted).

To determine if a party was provided with a full and fair opportunity to litigate in a prior proceeding, "the court must compare the procedures in the prior and subsequent actions.  If 'procedural opportunities unavailable in the first action . . . could readily cause a different result' in the second action, then the results of the first action generally should not be given preclusive effect."  *Maciel v. Comm'r of Internal Revenue*, 489 F.3d 1018, 1023 (9th Cir. 2007).  Second, "the court must consider the parties' incentives to litigate in the two actions. If a party had good reason not to contest an issue vigorously

during the first action and did not, in fact, vigorously contest the issue, that party generally should be entitled to relitigate the issue during the second action." *Id.*

Here, IQVIA argues that both factors demonstrate it did not have a full and fair opportunity to litigate the unclean hands affirmative defense. On the first factor, IQVIA argues that MedImpact obstructed discovery into MedBlocX stating that MedImpact knows full well it has never submitted its MedBlocX product for inspection . . ."[6] and the Magistrate Judge denied it discovery into MedBlocX. (Dkt. No. 102 at 6, 8, 11-12.) In direct contrast, MedImpact replies that IQVIA deposed MedImpact's witnesses about MedBlocX at ten depositions, deposed the developer of MedBlocX and IQVIA's experts were allowed to inspect three platforms, including MedBlocX in October 2021. (Dkt. No. 109 at 7.)

Between October 12-14, 2021, IQVIA's experts inspected MedBlocX as well as MedImpact's other platforms relevant in *MedImpact I*, and during that inspection, took screen shots of MedBlocX. (Dkt. No. 109-1, Hodges Decl. ¶ 9.) In its sur-reply, IQVIA agrees its experts were able to review and take screenshots of the "outward-facing MedBlocX user interface" but did not inspect its source code. (Dkt. No. 111-2, Sur-reply ¶ 3.) It contends it was denied inspection of MedBlocX's source code. (Dkt. No. 111-1, Schmit Decl. ¶ 4.)

At the same time, on October 12, 2021, the parties submitted a discovery dispute where IQVIA sought information relating to "each Relevant MedImpact Application." (Dkt. No. 345.) Subsequently, on December 3, 2021, the parties submitted another discovery dispute where IQVIA sought "copies of source code repositories that contain all versions of the Drug-to-Diagnosis Edits and/or any Accused MedImpact Product,

---

[6] Later in the opposition, IQVIA states that it was denied the right to inspect any "source code repositories that contain all versions of the Drug-to-Diagnosis Edits and/or any Accused MedImpact Product." (Dkt. No. 102 at 8.)

1   including all versions of the source code created from inception through the present."

2   (Dkt. No. 367; Dkt. No. 367-5, Swedlow Decl., Ex. 4, Request No. 145, at 8.)  IQVIA

3   also sought "[d]ocuments sufficient to show the technologies and platforms used for the

4   Drug-to-Diagnosis Edits and/or any Accused MedImpact Product, including but not

5   limited to applications, tools, web platforms, and software."  (Dkt. No. 367-5, Swedlow

6   Decl., Ex. 4, Request No. 146.)

7        On January 13, 2022, Magistrate Judge Butcher denied both motions to compel by

8   IQVIA.  (Dkt. No. 388.)  The Magistrate Judge ruled that MedBlocX was not relevant to

9   the FAC, and additionally that it was not relevant to the unclean hands defense because

10  IQVIA's alleged trade secrets of drug-to-diagnosis indication and contraindication edits

11  do not arise out of the claims in MedImpact's FAC and are new and distinct claims that

12  are at issue in the related or in this case.  (*Id.* at 6-7.)  But on May 17, 2022, this Court

13  concluded differently holding that IQVIA's allegations on the unclean hands affirmative

14  defense were relevant to MedImpact's affirmative claims.  (Dkt. No. 557.)

15       While IQVIA may have inspected the "outward-facing MedBlocX user interface",

16  it was denied discovery into the source codes of MedBlocX.   Further, the inspection of

17  MedBlocX was likely permitted by MedImpact as it related to the affirmative claims in

18  *MedImpact I* and not as it related to the unclean hands defense.  Finally, while

19  MedImpact challenges the relevance of the source codes of MedBlocX as a red herring,

20  that issue is not properly before the Court.  Because IQVIA has sufficiently raised a

21  concern that it was denied discovery concerning its trade secrets on the unclean hands

22  affirmative defense, the Court concludes that it may not have had a full and fair

23  opportunity to litigate the defense.

24       Further, the issue of MedImpact's alleged spoliation of evidence by deleting tens

25  of thousands of relevant emails is currently disputed and subject to a motion before the

10

1  Magistrate Judge.  (Dkt. Nos. 611, 614, 632, 639.)  Thus, the Court declines to consider

2  an issue currently before the Magistrate Judge.

3        As to the second factor on whether a party had a full and fair opportunity to litigate

4  considering "the parties' incentives to litigate in the two actions", IQVIA raises the issue

5  but fails to present argument on it and MedImpact does not address it.  (Dkt. No. 102 at

6  11.)  Accordingly, the Court concludes the second factor is not at issue by the parties.

7        Thus, because IQVIA has shown that it may not have had a full and fair

8  opportunity to litigate the unclean hands affirmative defense, the Court concludes the

9  orderly course of justice factor does not support a stay.

10        **2.**     **Possible Damage in Granting a Stay**

11        Next, MedImpact maintains that IQVIA will not be harmed because this case is in

12  its early stage and it has waited years to file this case and the stay is for a short period

13  until trial is completed in February 2023.  (Dkt. No. 97-1 at 17-18.)  It further contends

14  that while the stay is in place, IQVIA's claims will be significantly streamlined or fully

15  resolved through disposition of the unclean hands defense in *MedImpact I*.  (*Id.*)  IQVIA

16  argues it will be prejudiced if a stay is granted because MedImpact's trade secret

17  misappropriation is ongoing as they are currently selling or offering MedBlocX for sale

18  and a stay would damage IQVIA.  (Dkt. No. 102 at 15-17.)

19        The Ninth Circuit has recognized that a party seeking injunctive relief to address

20  an ongoing harm makes out a clear case of hardship more so than if a party seeks

21  monetary relief to address a past harm.  *Lockyer*, 398 F.3d at 1112.

22        Here, the FAC seeks injunctive relief as well as damages.  (Dkt. No. 68, FAC ¶¶

23  118-127; 129-37.)  It seeks a preliminary and permanent injunction enjoining MedImpact

24  from further misappropriation or use of IQVIA's trade secrets.  (*Id.* at p. 65.)  Despite

25  MedImpact's protestations to the contrary by arguing that IQVIA has inspected

26  MedBlocX and did not find any misappropriated trade secrets, procedurally, at this early

27

28

stage, the Court is not in a position to make findings of fact.  Therefore, MedImpact's arguments based on the merits of IQVIA's claims are not persuasive.  Because IQVIA seeks injunctive relief barring MedImpact from continuing to misappropriate its trade secrets, and MedImpact has not presented any other persuasive argument to support lack of harm to IQVIA, the Court concludes that it has demonstrated that it may suffer harm or hardship if the Court imposes a stay.

### 3.     Hardship or Inequity a Party May Suffer in Denying a Stay

Finally, MedImpact argues it will suffer significant hardship if a stay is denied because it will be required to litigate two separate cases involving the same legal and factual issues especially if some of the issues may be precluded by a judgment in its favor on IQVIA's unclean hands defense.  (Dkt. No. 97-1 at 18-19.)  IQVIA responds that MedImpact will not suffer any harm solely for engaging in litigation on two fronts and a stay would not promote judicial efficiency or the narrowing of issues since issue preclusion would not apply.  (Dkt. No. 102 at 18-19.)

If there is "even a fair possibility" that a stay "will work damage to someone else," the moving party "must make out a clear case of hardship or inequity in being required to go forward."  *Landis*, 299 U.S. at 255; *see Lockyer*, 398 F.3d at 1112 ("[B]eing required to defend a suit, without more, does not constitute a "clear case of hardship or inequity" within the meaning of *Landis*").  "Where the opponent does not adduce evidence that it will be harmed by a stay, however, courts have considered the moving party's burden in litigating the case to be a legitimate form of harm."  *In re Am. Apparel, Inc. Shareholder Derivative Litig*., No. CV 10–06576 MMM RCX, 2012 WL 9506072, at *45 (C.D. Cal. July 31, 2012) (citing *Cohen v. Carreon*, 94 F. Supp. 2d 1112, 1118–19 (D. Or. 2000) (noting that defendants' concern "that they would be required to waste time and money needlessly litigating the same substantive and procedural issues as they did in the California action" was valid, and relying on that conclusion in part in granting a stay

21-CV-2081-GPC-DEB

where plaintiff would not be harmed); *Lamar Co., LLC v. Continental Cas. Co*., No. CV–05–320–AAM, 2007 WL 81876, at *3 (E.D. Wash. Jan. 8, 2007) (because the court was not persuaded that there was a "fair possibility" the non-moving party would be harmed, "it [was] not necessary for Lamar or Continental to demonstrate a 'clear case of hardship or inequity'")).

Here, because IQVIA has shown that there is a fair possibility of harm if a stay is entered, MedImpact must demonstrate a "clear case of hardship or inequity", besides the burden of litigating on two fronts, which it has failed to do.

Despite the Court's ruling denying a stay, it recognizes that while the motion to stay was pending, a stay has, in effect, been placed on this case. Trial in *MedImpact I* is set to start in about two months. Because this case is in its early stages and the parties have not had their early neutral evaluation conference nor a case management conference, the likelihood that MedImpact will be harmed by having to vigorously litigate *MedImpact I* and conduct discovery in this case would not be impactful.

In considering the factors to support a *Landis* stay, the Court finds that MedImpact has not demonstrated a stay is warranted and DENIES the motion to stay the case.

## Conclusion

Based on the reasoning above, the Court GRANTS Plaintiff's ex parte motion for leave to file a sur-reply and DENIES Defendants' motion to stay the case. The hearing set on December 9, 2022 shall be vacated.

IT IS SO ORDERED.

Dated:  December 6, 2022

Hon. Gonzalo P. Curiel
United States District Judge

13